[Cite as *Burke v. French*, 2014-Ohio-3217.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| DONALD BURKE, ET AL. | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiffs-Appellees | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 14CA1 |
| | : | |
| JAMIE M. FRENCH, ET AL. | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Knox County Court of
                             Common Pleas, Juvenile Division,
                             Case No. 212-3155



JUDGMENT:                    AFFIRMED




DATE OF JUDGMENT ENTRY:      July 17, 2014




APPEARANCES:

For Plaintiffs-Appellees:                For Defendant-Appellant:

HARLOW H. WALKER                         D. DERK DEMAREE
120 ½ East High Street                   205 East Chestnut Street
Mount Vernon, OH 43050                   P.O. Box 766
                                         Mount Vernon, OH 43050

DOUGLAS ALTHAUSER, G.A.L.
P.O. Box 671
Lewis Center, OH 43035

*Delaney, J.*

{¶1}   Defendant-appellant Jamie M. French ("Mother") hereby appeals from the January 9, 2014 decision of the Knox County Court of Common Pleas, Juvenile Division.   Appellees ("Grandparents") are Donald Burke ("Grandfather") and Susan Burke ("Grandmother").

## FACTS AND PROCEDURAL HISTORY[1]

{¶2}   Q.B., a minor child, was born on May 8, 2008 to Mother.[2]   Grandparents are Mother's parents. On November 8, 2012, Grandparents filed a complaint for grandparent visitation pursuant to R.C. 3109.12 and Mother answered.   Mother also filed a memorandum in opposition to Grandparents' request for temporary visitation.

{¶3}   On February 7, 2012, the magistrate appointed a guardian ad litem and a final hearing was scheduled to begin on April 4, 2013, but was later continued.

{¶4}   Another hearing was scheduled to begin on June 4, 2013.

{¶5}   On that date, the parties filed a joint Memorandum of Agreement stating all matters pending before the court were resolved without trial.   The handwritten agreement states in pertinent part:

> [Grandparents] & [Mother] shall pursue counseling with Jeannette Hammond (or another qualified clinician) to work on interpersonal & historical matters between themselves, and on matters concerning [Q.B.]'s best interests.

[1] The case history relevant to the within appeal is below; a number of motions and orders not relevant to the issues before us are omitted.
[2] Q.B.'s father is Gregory K. Schrader, who was not a party to the underlying litigation and is not a party to this appeal.

The parties may amend these agreements if both parties agree, without intervention by the Court. The parties agree to defer to the recommendations of the family counselor (i.e. Jeannette Hammond) & follow those recommendations in the event they cannot mutually agree on a modification to this plan.

Neither party shall demean nor disparage the other in [Q.B.]'s presence.

In the event that [Mother] believes [Q.B.] is too ill to participate in companionship time, [Mother] has the authority to cancel that day's visitation. In that event, the visitation shall be made up at the next Friday in which [Stepfather's] daughters are not scheduled to be at [Mother's] home.

[Grandparents] shall provide [Mother] with an itinerary & contact number during their visit. They shall provide this, in writing, by the exchange that starts the visitation for each visit. Without same there will be no visit.

Neither party will knowingly put [Q.B.] in the presence of cigarette smoke or anyone smoking cigarettes.

[Grandparents] shall exercise [deleted in original] companionship time with [Q.B.] on the second Friday of each month, unless [Stepfather's] daughters are staying [deleted] at [Mother's] home subject to [Stepfather's] parenting schedule, at which point companionship time shall be the third Friday. In 2013,

[Grandparents] shall exercise companionship time on June 14, July 12, August 9, September 20, October 18, November 15, and December 13 unless otherwise agreed.

[Grandparents'] visitation with [Q.B] shall start at 9: a.m. & end at 3: p.m. unless the parties agree otherwise. Exchange shall occur at the Subway in front of & outside the Wal-Mart in Mount Vernon.

[Grandparents] are not restricted as to where they may take [Q.B.] during their companionship time. No one shall record [Grandparents'] companionship time with [Q.B.], other than photographs or video taken for recreation or sentimental reasons. [Grandparents] shall not consume alcohol during companionship time with [Q.B.], nor 6 hours before the start of a visit.

{¶6} A typewritten addendum further states:

Grace period

The parent transporting the children for parenting time shall have a grace period of 15 minutes for pick-up and delivery if both parties live within 30 miles of one another. If the one-way distance to be traveled is more than 30 miles, the grace period shall be 30 minutes. In the event the non-residential parent exceeds the grace period, that particular parenting time is forfeited unless prior notification and arrangements have been made. This rule shall be subject to the exception that in the event the non-residential parent

experiences an unavoidable accident, emergency, or traffic delay en route and promptly notifies the other parent of the delay the parenting time is not forfeited.

PROMPTNESS AND FLEXIBILITY ARE TO BE THE GOALS OF THE PARENTS CONCERNING TRANSPORTATION OF THE CHILDREN FOR PARENTING TIME. (Emphasis in original).

{¶7} The agreement was signed and approved by the magistrate on June 4, 2013.

{¶8} On August 9, 2013, Grandparents filed a Motion to Show Cause, alleging Mother failed to comply with the court order on three bases: denial of companionship time, video recording of companionship time, and failure to pursue counseling. A show cause hearing was scheduled for September 19, 2013.

{¶9} On September 24, 2013, a Magistrate's Decision was filed. The findings of fact stated in pertinent part:

* * * *.

2. On August 9, 2013, [Grandparents] provided [Mother] with an itinerary and contact number. [Mother] didn't like the itinerary for unspecified reasons and requested a second contact number. The visit was denied.

3. On September 15, 2013, [Grandparents] provided [Mother] with an itinerary, which [Mother] determined was unacceptable for unspecified reasons. The visit was denied.

4.    On July 12, 2013, [Mother] and her husband, [Stepfather], videotaped the exchange of the child.

5.    [Mother] unilaterally discontinued counseling with Jeannette Hammond due to differences with the counselor.

6.    No evidence was presented that the child's visits with [Grandparents] posed any sort of threat to the health, safety, and welfare of the child.

{¶10} The magistrate thereupon found Mother in contempt of the court order pursuant to R.C. 3109.051(K) due to her denial of companionship, videotaping of the exchange, and discontinuance of counseling. Mother was ordered to serve a jail term of 30 days, with 5 of those days being "actual incarceration for violation of the prohibition regarding videotaping or recording, an act of criminal contempt for which no purge condition is possible." Grandparents were granted compensatory companionship time of two weekends and Mother was ordered to pay Grandparents' attorney fees and costs.

{¶11} Mother requested a transcript of the contempt hearing to prepare objections to the Magistrate's Order. On October 16, 2013, a Magistrate's Order was filed stating: "The Court finds that a hearing was held on September 19, 2013 but, due to an equipment malfunction, no recording of the proceedings was made. * * *[T]he parties shall file an affidavit pursuant to Rule 53(C)(3)(b)(iii) (*sic*) of the Rules of Civil Procedure on or before November 15, 2013, along with any objections to the Magistrate's Decision."

{¶12} On October 24, 2013, a journal entry was filed memorializing the parties' agreement of June 4, 2013, with the addendum of a relocation notice pursuant to R.C. 3109.051(G).

{¶13} Mother filed her objections to the magistrate's decision on November 14, 2013, including Mother's affidavit.

{¶14} The Guardian Ad Litem filed an affidavit regarding his recollection of the September 19 contempt hearing stating he testified, inter alia: in his opinion Mother was not justified in refusing companionship in August; the argument between Mother and Grandmother was "stupid" and demonstrated a refusal to cooperate on a small matter; and he might be forced to file a motion on Q.B.'s behalf to end companionship with Grandparents because the acrimony between these parties has become so stressful for the child. The Guardian also objected to the contempt order because Mother was not given an opportunity to purge the contempt.

{¶15} Grandparents filed a memorandum contra Mother's objections on November 25, 2013, including Grandmother's affidavit.

{¶16} On January 9, 2014, the trial court filed a Judgment Entry reducing Mother's jail time to 2 days, noting "[w]hile the Court cannot and will not tolerate direct disobedience of its orders, the punishment must fit the nature and extent of the offense."

{¶17} Mother now appeals from the trial court's Judgment Entry of January 9, 2014.

{¶18} Appellant raises two assignments of error:

**ASSIGNMENTS OF ERROR**

{¶19} "I.  THE APPELLANT WAS DENIED DUE PROCESS AND FAIR TRIAL WHEN HER ADJUDICATION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶20} "II.  THE TRIAL COURT VIOLATED APPELLANT'S DUE PROCESS RIGHTS WHEN IT FAILED TO RECORD THE TRIAL AND FAILED TO PRODUCE A TRANSCRIPT FOR REVIEW."

**ANALYSIS**

{¶21} In her first assignment of error, Mother argues her adjudication of contempt is against the manifest weight of the evidence.  We disagree.

{¶22} First, Mother argues when she videotaped the interaction between Q.B. and Grandparents on July 12, 2013, the agreement had not yet been journalized, implying she was under no obligation to comply with its terms. We note Mother's signature and that of her counsel appears on the handwritten agreement, submitted to the magistrate with the affirmation the parties were able to resolve the matter without trial.  The agreement was approved by the magistrate that day.  It is well established that if parties voluntarily enter into an agreement, the agreement becomes a valid and binding contract between the parties. *Phillips v. Phillips,* 5th Dist. Stark Nos.2004CA105 and 2004CA005, 2005–Ohio–231, ¶ 22.

{¶23} Moreover, Mother did not contest the validity or enforceability of the agreement before the trial court.  As a reviewing court, we will not consider issues which are raised for the first time on appeal and which were not brought to the attention of the trial court.  *Swank v. Swank*, 5th Dist. Richland No. 07 CA 0061, 2008-Ohio-3997, ¶ 27.

{¶24} Next, we turn to the finding of contempt. "An appellate court's standard of review of a trial court's contempt finding is abuse of discretion." *Snider v. Snider,* 5th Dist. Fairfield No. 11–CA–58, 2013–Ohio–1168, ¶ 6, citing *State ex rel. Celebrezze v. Gibbs,* 60 Ohio St.3d 69, 573 N.E.2d 62 (1991). We will not reverse a finding of contempt unless the trial court's decision was unreasonable, arbitrary, or unconscionable. *Snider* at ¶ 6, citing *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). We look to the totality of the circumstances in determining whether the trial court's decision constitutes an abuse of discretion. *Ryder v. Ryder*, 5th Dist. Stark No. 2001CA00190, 2002-Ohio-765, *2, citing *In re: Brumfield*, 5th Dist. Stark No. 1998CA00326, unreported, 1999 WL 744172 (Jun. 7, 1999).

{¶25} Mother contests the trial court's finding of contempt, but admits in her affidavit she did in fact violate the agreement as alleged. Her admissions, however, include excuses for her repeated failure to comply with the order. Mother attested to the following in pertinent part:

> 1. Visitation was denied to [Grandparents] on August 9, 2013 because they did not give me a complete itinerary and they did not give me [Grandmother's] cellular number;
>
> 2. The itinerary I received merely indicated that visitation would be at one or more of the public parks in Gambier or Mount Vernon and was otherwise extremely vague;
>
> * * * *.
>
> 4. I never recorded [Grandparents'] companionship time with [Grandparents] (*sic*);

5. I did record the pickups and drop-offs of [Q.B.] with [Grandmother];

6. I believe companionship starts when [Q.B.] gets into the [Grandparents'] car;

7. I did not willfully fail to pursue Court-Ordered counseling;

8. I met with Jeannette Hammond on June 13, 2013 for an hour;

9. Ms. Hammond wanted me to meet with [Grandparents' to work out our differences;

10. I was willing to meet with [Grandparents] eventually but I did not feel I was ready at that time;

11. I met with Ms. Hammond on August 26, 2013, but only for half an hour;

12. [Q.B.] and I are currently counseling at Moundbuilders.

****.

{¶26} We note Mother's affidavit does not make reference to the magistrate's finding she denied companionship on September 15, 2013 for "unspecified reasons." If a Rule 53 affidavit is employed, it must purport to comprise all the relevant evidence submitted to the referee on the issue, instead of just the evidence the objecting party believes was disregarded. *Pappenhagen v. Payne*, 48 Ohio App.3d 176, 178, 549 N.E.2d 208 (1988), citing *Sabik v. Drake*, 8th Dist. Cuyahoga No. 53588, unreported, at *4-5, 1988 WL 32111 (Mar. 17, 1988).

{¶27} Our standard of review of a contempt finding is "highly deferential." See, *In re Helfrich*, 5th Dist. Licking No. 13CA20, 2014-Ohio-1933, ¶ 40, citing *State ex rel.*

*Cincinnati Enquirer v. Hunter*, 138 Ohio St.3d 51, 2013–Ohio–5614, 3 N.E.3d 179, ¶ 29; *Dobbins v. Evans*, 5th Dist. Stark No.2011 CA00171, 2012–Ohio–898, ¶ 12. We defer to the trial court because the magistrate and trial court have heard the evidence and are familiar with the terms of the parties' agreement. The trial court's decision finding appellant in contempt is not unreasonable, arbitrary, or unconscionable because it is evident from her own admissions Mother did not abide by the terms of the agreement and sought to hold Grandparents to terms not included in the parties' agreement. Mother has essentially attempted to re-write the terms of the agreement to her own ends, thereby overriding the terms and spirit of the agreement and flouting the authority of the Court.

{¶28} Next, we turn to the sanction imposed. The trial court reduced the magistrate's imposition of 30 days in jail, with 5 days of actual incarceration, to 2 days in the Knox County Jail, noting "[w]hile the Court cannot and will not tolerate direct disobedience of its orders, the punishment must fit the nature and extent of the offense."

{¶29} Indirect contempt occurs when a party engages in conduct outside the presence of the court that demonstrates a lack of respect for the court or its lawful orders. *Bierce v. Howell*, 5th Dist. Delaware No. 06CAF050032, 2007–Ohio–3050, ¶ 16. A contempt finding may be civil or criminal in nature. In *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 253–254, 416 N.E.2d 610 (1980), the Supreme Court of Ohio discussed the distinction between civil and criminal contempt as follows:

> While both types of contempt contain an element of punishment,
> courts distinguish criminal and civil contempt not on the basis of
> punishment, but rather, by the character and purpose of the

punishment. * * * Punishment is remedial or coercive and for the benefit of the complainant in civil contempt. Prison sentences are conditional. The contemnor is said to carry the keys of his prison in his own pocket * * * since he will be freed if he agrees to do as ordered. Criminal contempt, on the other hand, is usually characterized by an unconditional prison sentence. Such imprisonment operates not as a remedy coercive in its nature but as punishment for the completed act of disobedience, and to vindicate the authority of the law and the court. * * *

(Citations omitted.)

{¶30} An individual charged with civil contempt must be permitted an opportunity to purge herself of contempt by demonstrating compliance with the court order, but no such requirement exists with criminal contempt because the purpose of the latter is punitive. *Ryder*, supra, 2002-Ohio-765 at *2, citing *Brown,* supra, 64 Ohio St.2d at 250. Criminal contempt is characterized by an unconditional fine or prison sentence. Id.

{¶31} In this case, the trial court imposed an unconditional jail term, albeit a shorter one than that imposed by the magistrate. The purpose of this jail term is punitive, as reflected in the entries of both the magistrate and the trial court. Mother's actions in this case therefore constitute indirect criminal contempt.

{¶32} "To sustain an indirect criminal contempt adjudication, there must be evidence by which a reasonable trier of fact could find beyond a reasonable doubt that an accused contemnor intended to bring the administration of the law into disrepute and disregard or otherwise intentionally impede, embarrass or obstruct the court in the

performance of its functions;" this intent "may be shown by circumstantial evidence." *Helfrich*, supra, 2014-Ohio-1933 at ¶ 45, citing *State v. Baumgartner,* 6th Dist. Ottawa No. OT–06–046, 2008–Ohio–971, ¶ 97. Mother asserts her adjudication is against the manifest weight of the evidence but we find the evidence presented at the September 19 hearing, as related in the affidavit of Mother, Grandmother, and the Guardian Ad Litem, support the trial court's finding beyond a reasonable doubt.

{¶33} The trial court's decisions to find Mother in contempt and to impose a jail term of two days is not an abuse of discretion. Mother's first assignment of error is overruled.

II.

{¶34} In her second assignment of error, Mother summarily argues the trial court violated her due process rights in "failing to produce a transcript for review." We disagree.

{¶35} As noted supra, the magistrate responded to Mother's request for a transcript with an order stating the contempt hearing was not recorded due to an equipment malfunction; therefore the parties were required to file an affidavit pursuant to Rule 53(C)(3)(b)(iii) (*sic*). Civ.R. 53(D)(3)(b)(iii) provides as follows:

> (iii) *Objection to magistrate's factual finding; transcript or affidavit.* An objection to a factual finding, whether or not specifically designated as a finding of fact under Civ.R. 53(D)(3)(a)(ii), shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available. With leave of court, alternative

technology or manner of reviewing the relevant evidence may be considered. The objecting party shall file the transcript or affidavit with the court within thirty days after filing objections unless the court extends the time in writing for preparation of the transcript or other good cause. If a party files timely objections prior to the date on which a transcript is prepared, the party may seek leave of court to supplement the objections.

{¶36} The Civil Rules therefore provide an alternative when proceedings are not able to be transcribed.

{¶37} Mother does not specify how her due process rights were violated by the trial court when the applicable Civil Rule was otherwise followed. Mother had an opportunity to submit her own affidavit and did so. Due process requires "the decision-maker [to], in *some meaningful manner,* consider evidence obtained at hearing." (emphasis in original), *State ex rel. Ormet Corp. v. Industrial Com'n of Ohio*, 54 Ohio St.3d 102, 107, 561 N.E.2d 920 (1990). The affidavits accomplish that purpose. Mother presents us with no authority in support of her argument the affidavits do not comply with due process, and she points to no evidence in the record to indicate the trial court did not review the affidavits and weigh the evidence from the hearing in "some meaningful manner."

{¶38} Mother's second assignment of error is overruled.

**CONCLUSION**

{¶39} Mother's two assignments of error are overruled and the judgment of the Knox County Court of Common Pleas, Juvenile Division is affirmed.

By:  Delaney, J. and

Gwin, P.J.

Farmer, J., concur.