[Cite as *Weisgarber v. Weisgarber*, 2016-Ohio-676.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| MONICA WEISGARBER | : | JUDGES: |
| NKA CARMAN | : | Hon. Sheila G. Farmer, P.J. |
| | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellant | : | Hon. John W. Wise, J. |
| | : | |
| -vs- | : | |
| | : | Case No. 2015CA00158 |
| CHRISTOPHER WEISGARBER | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Court of Common Pleas, Family Court Division, Case No. 2004DR00331

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      February 22, 2016

APPEARANCES:

For Plaintiff-Appellant

DENISE E. FERGUSON
P.O. Box 26004
Akron, OH  44319

Guardian ad Litem

KRISTEN GUARDADO
218 Cleveland Avenue, SW
Canton, OH  44702

For Defendant-Appellee

TRACEY A. LASLO
325 East Main Street
Alliance, OH  44601

*Farmer, P.J.*

{¶1}  Appellant, Monica Weisgarber nka Carman, and appellee, Christopher Weisgarber, were granted a divorce on June 10, 2004.  In 2007 and 2011, appellee was named residential parent and legal custodian of the parties' three children, P. born May 8, 1998, C. born August 17, 2001, and Z. born June 16, 2005.

{¶2}  On May 21, 2013, appellant filed a motion to reallocate parental rights and responsibilities.  A hearing before a magistrate was held on September 9, 2014.  By decision filed December 5, 2014, the magistrate denied the motion, finding appellant interfered with appellee's custody, her testimony was inconsistent, and there was no change of circumstances.  The trial court approved and adopted the decision.

{¶3}  During the intervening years, both parties remarried, and appellant had two more children.  In December 2014, appellant was informed by her two younger children that C. had behaved inappropriately with one of them.  Appellant took the child to a doctor.  The Department of Job and Family Services became involved and a police investigation ensued.  Appellant took C. to the police department and permitted a police interrogation without an attorney present.  C. was formally charged with gross sexual imposition.  Appellant did not inform appellee of the allegations and the police involvement.

{¶4}  On March 10, 2015, appellee filed a motion for contempt based upon appellant's actions.  A hearing was held on July 20, 2015.  By judgment entry filed August 4, 2015, the trial court found appellant in contempt, and ordered her to serve thirty days in jail and pay $1,000 in attorney fees related to the matter.  The trial court also ordered appellant to pay child support in the amount of $285.62 per month.

{¶5} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶6} "THE TRIAL COURT COMMITTED REVERSIBLE AND STRUCTURAL ERROR WHEN IT FOUND MOTHER GUILTY OF CRIMINAL CONTEMPT FOR COOPERATING WITH THE POLICE DEPARTMENT'S REQUEST TO BRING THE CHILD FOR AN INTERVIEW WHEN THE POLICE KNEW MOTHER DID NOT HAVE CUSTODY."

II

{¶7} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT SENTENCED MOTHER TO JAIL TIME WITHOUT USING THE PROPER STANDARD OF BEYOND A REASONABLE DOUBT."

III

{¶8} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ITS CALCULATION OF CHILD SUPPORT BASED ON AN IMPUTED INCOME FOR MOTHER, DETERMINING WHICH PARENT MAY CLAIM THE CHILDREN AND PROHIBITING MOTHER FROM PROVIDING HEALTH INSURANCE FOR THE CHILDREN."

I, II

{¶9} Appellant's first two assignments challenge the trial court's finding of criminal contempt. Appellant claims the trial court committed structural errors and did not make proper findings as to guilt beyond a reasonable doubt. We disagree.

{¶10}  As explained by this court in *In the Matter of Amanda West,* 5th Dist. Knox No. 14CA22, 2015-Ohio-1501, ¶ 19:

The burden of proof in an indirect criminal contempt proceeding is proof beyond a reasonable doubt.  *Brown v. Executive 200, Inc.,* 64 Ohio St.2d 250, 252, 416 N.E.2d 610 (1980).   In cases of indirect criminal contempt, intent to violate the order or defy the court is an essential element.   *In re Purola,* 73 Ohio App.3d 306, 596 N.E.2d 1140 (3rd Dist.1991).  In an effort to ascertain an alleged contemnor's intent, the court must consider the totality of the circumstances.  *Id.*  An appellate court, when reviewing a trial court's finding of indirect criminal contempt, must determine whether sufficient evidence existed for the trial court to reasonably conclude beyond a reasonable doubt that the contemnor purposely, willfully, or intentionally violated a prior court order.  See *Midland Steel Prods. Co. v. U.A.W. Local 486,* 61 Ohio St.3d 121, 573 N.E.2d 98 (1991).

{¶11}  "The purpose of criminal sanctions is to vindicate the authority of the court and punish past acts of disobedience and thus penalties for criminal contempt are unconditional and 'may take the shape of an absolute fine for a specific amount or a determinate period of confinement.' "  *Geary v. Geary,* 5th Dist. Delaware No. 14CAF050033, 2015-Ohio-259, ¶ 44; *Contex v. Consolidated Technologies, Inc.,* 40 Ohio App.3d 94, 95 (1st Dist.1988).

{¶12}  An appellate court's standard of review of a trial court's contempt finding is abuse of discretion.  *State ex rel. Celebrezze v. Gibbs,* 60 Ohio St.3d 69 (1991).  In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.  *Blakemore v. Blakemore,* 5 Ohio St.3d 217 (1983).

{¶13}  "Our standard of review of a contempt finding is 'highly deferential.'***We defer to the trial court because the magistrate and trial court have heard the evidence and are familiar with the terms of the parties' agreement."  *Burke v. French,* 5th Dist. Knox No. 14CA1, 2014-Ohio-3217, ¶ 27.

{¶14}  The genesis of the contempt motion was appellant's actions, as the non-custodial parent, of permitting the parties' child, C., to be questioned by the police regarding a sexual abuse allegation made by appellant's younger child, without an attorney present, and not objecting to the police interview.  Vol. 1 T. at 5-7, 108, 110.  Appellant did not inform appellee, as the custodial parent, of this police investigation and interrogation.  *Id.* at 87-88, 128-130.

{¶15}  There is no dispute that the situation occurred and appellant permitted the police interview/interrogation.

{¶16}  Prior to this contempt motion being filed, appellant had filed a motion to reallocate parental rights and responsibilities on May 21, 2013.  A hearing before a magistrate was held on September 9, 2014.  By decision filed December 5, 2014, the magistrate denied the motion, finding appellant interfered with appellee's custody, her testimony was inconsistent, and there was no change of circumstances.  The trial court

approved and adopted the decision.  The decision contained the following findings in part and the following orders in part:

MOTHER consistently "misinterprets" court orders, refuses to be flexible or cooperate, interferes with and obstructs FATHER in the exercise of his rights.  MOTHER asserts that "others" have told her she can proceed in certain directions without any authority to do so in existing court orders.

***

To characterize MOTHER as "an overly concerned parent" is an understatement.  After all of the deflection, inconsistency and obfuscation, MOTHER deliberately violates the orders of this COURT.  She creates her own rules and expects everyone to play by them.  MOTHER contrives ambiguity in court orders which attempt to define the rights of the parties.***

Much of the current troubles can be attributed to MOTHER's perception that the parties have a quasi-shared parenting situation. **FATHER is the residential parent and legal custodian of all three of the children.**  As legal custodian, he has the right to make the essential decisions for the children including selection of medical providers and setting appointments.  While R C 3109.051 (H) (1) grants MOTHER equal access to records, it does not give MOTHER the right to schedule, attend or have input at every medical appointment for the children.  MOTHER'S actions continue to make parenting decisions unnecessarily difficult,

undermine FATHER's positon as parent and discourage the relationship between the children and FATHER.

***

MOTHER shall not:

commit the children to any activity on FATHER'S time without his consent which is to be expressed on Family Wizard and preserved;

set medical appointments for the children unless an emergency occurs which requires immediate treatment during the time that they are visiting with her;

provide any medical insurance coverage for [P.], [C.] and [Z.];

use any medical insurance coverage for [P.], [C.] and [Z.] other than FATHER's provider Tricare;

provide any medical provider with insurance coverage information other than FATHER's insurance which is Tricare;

bring her husband and/or children to medical appointments for [P.], [C.], and [Z.];

attend medical appointments for [P.], [C.] and [Z.] unless invited by FATHER; and

make "day to day decisions" regarding [Z.] that impact FATHER's time with [Z.]

{¶17} The incident regarding the police interview/interrogation occurred within a month of these stringent orders. In its August 4, 2015 judgment entry, the trial court found

and concluded appellant violated not only the spirit of the December 5, 2014 order, but the black letter law of the order as well:

2. Mother continued to ignore court orders and make independent decisions regarding the children, even though she was not the custodial parent. The Magistrate Decision filed December 5, 2014, identifies Father as the custodial parent, but felt the extreme need to clearly notify Mother as to what this means by ordering: "**Father is the residential parent and legal custodian of all three children**. As legal custodian, he has the right to make the essential decisions for the children." The Magistrate took extraordinary measures and went on to specifically note that Mother shall not commit the children to activities, set medical appointments, change medial (sic) insurance or make day to day decisions that affect Father.

3. Mother remarried and has two younger children from that marriage that reside with her and her Husband. The latest filings relate to alleged inappropriate sexual contact between [C.] and these two younger children. Mother failed to notify Father, the custodial parent, of the allegations or the DJFS investigation. Mother took [C.] to the police station without notifying Father, who is the custodial parent. Mother submitted [C.] to a custodial interrogation without notifying Father or allowing Father the ability to provide [C.], age 13 at the time, with the benefit of legal counsel while possibly facing felony charges. In fact, [C.] was charged with Felony 3 Gross Sexual

Imposition after this interrogation. This clearly is an "essential decision" for [C.] that Father should have made.

4. While Mother testified that the detective investigating the allegations did not have a problem with the non-custodial parent bringing in the child, this did not relieve Mother of her obligation and duty to notify Father of the allegations and the interview with the detective. Mother and her husband both testified that the interview was set up by them during discussions with the detective on a Friday and the interview was scheduled for the next Tuesday when Mother would have visitation. Mother had an opportunity to tell the detective to contact the custodial parent to schedule an interview or herself notify Father. She failed to do anything and Father learned of this custodial interrogation **after** the fact when informed by the DJFS investigating worker. Mother blatantly and willfully violated court orders which name Father as the custodial and residential parent of this child and the one with the only authority to make decisions on this child's behalf. Father was prevented from being able to make decisions on behalf of [C.], prevented from being with [C.] at the interrogation, and prevented from providing [C.] with an attorney at the interrogation. Mother is clearly in contempt of court orders but more importantly, [C.] was deprived of having his Father present and supporting him during a time when he needed that support most. Mother used [C.] as a pawn to exert control over the situation and prevent Father from making decisions in [C.]'s best interest. This is so

reprehensible because this criminal matter may affect [C.] for the rest of his life.

\*\*\*

1. \*\*\*But Mother should be well aware if she continues to try to make Father out to be the bad guy and continues to undermine him as the custodial parent, there may be modifications. **MOTHER DOES NOT SEEM TO GET THE FACT THAT SHE IS NOT THE DECISION MAKER.** The Court is at a loss as to how to get that fact across, and it will be addressed in the imposition hearing.

\*\*\*

5. Monica Carmen is found guilty of contempt. She is sentenced to 30 days in the Stark County Jail. An imposition hearing will be held on September 14, 2015 at 9:20 am. Monica Carmen shall appear or a warrant for her arrest shall issue. Monica Carmen is ordered to pay $1,000 in attorney fees to Attorney Laslo by September 2, 2015.

{¶18} The language employed by the trial court, "Mother blatantly and willfully violated court orders" and "Mother is clearly in contempt of court orders," is a sufficient indication that the trial court applied the "beyond a reasonable doubt" standard.

{¶19} Upon review, we find the trial court did not abuse its discretion in finding appellant guilty of contempt and sentencing her to thirty days in jail.

{¶20} Assignments of Error I and II are denied.

III

{¶21} Appellant claims the trial court erred in calculating child support based on an imputed income for her, improperly assigned the tax exemptions to appellee, and erred in prohibiting her from providing health insurance for the children. We disagree.

{¶22} In its judgment entry filed August 4, 2015, the trial court found and concluded the following on the issue of imputed income and child support:

7. Both parties agree that Father's annual income is $63,013.83. Mother's income is in dispute. In 2007, Mother was earning $54,000 working for the Postal Service. She quit that job. Mother has an Associate's Degree in Early Childhood, a BA in Early Childhood K-3 and has been a licensed teacher since July 2014. She currently is employed part time through Massillon City Schools as a tutor earning $20/hr. Mother's year-to-date wages for 2015 are $7,288.65. Father argues Mother should be imputed the $54,000 income from the job she quit. Mother argues imputation of minimum wage only. Mother has the ability to earn a substantial income. Prior to earning her degree, she earned $54,000 and can earn that much as a teacher/tutor. The Court imputes $25,000 as income for Mother, understanding that she can and should earn more. Since this is a minimal imputation to Mother, there will be no deviation of the child support for time allocation. The Child Support Guideline Worksheet is attached as Exhibit A.

***

4. Pursuant to the child support schedules and worksheet the annual amount of reasonable and necessary child support for three children is $16,251.50. Fact #7. The husband's obligation is $12,824.06, or 78.91%, and the wife's obligation is $3,427.44, or 21.09%. (See attached worksheet). O.R.C. §3109.05(A)(1), §3119.022, §3123.17.

Effective January 22, 2015, the Mother Monica Carmen, the Obligor, shall pay to the Father Christopher Weisgarber, the Obligee, the sum of $285.62, per month, (plus 2% processing fee), with insurance, for the support of the parties' children. When health insurance is not available, Mother shall pay to Father the sum of $231.37 per month, plus processing fee. The Cash Medical Support is ordered at $68.75 per month plus processing fees.

{¶23} The trial court ordered continuing jurisdiction on the child support issue "until the children have reached age eighteen and are no longer attending high school on a full-time basis."

{¶24} Appellant does not dispute the narrative and findings concerning her income, but argues the trial court failed to make an explicit finding that she was voluntarily underemployed or unemployed. Appellant also argues evidence was not presented that she could earn $25,000 as a teacher, and argues she chose the substantial decrease in her income to be with her children during their school breaks and vacations.

{¶25} In calculating child support, a trial court is permitted to impute income to a parent when the parent is voluntarily unemployed or voluntarily underemployed. R.C.

3119.01(C)(5) and (11). "In deciding if an individual is voluntarily under employed or unemployed, the court must determine not only whether the change was voluntary, but also whether it was made with due regard to obligor's income-producing abilities and his or her duty to provide for the continuing needs of the child." *Farrell v. Farrell,* 5th Dist. Licking No. 2008-CA-0080, 2009-Ohio-1341, ¶ 20. The decision to impute income to a parent is within the trial court's sound discretion. *Rock v. Cabral,* 67 Ohio St.3d 108 (1993); *Blakemore.*

{¶26} Pursuant to R.C. 3119.01(C)(11)(a), imputed income is determined from the following criteria:

(i) The parent's prior employment experience;

(ii) The parent's education;

(iii) The parent's physical and mental disabilities, if any;

(iv) The availability of employment in the geographic area in which the parent resides;

(v) The prevailing wage and salary levels in the geographic area in which the parent resides;

(vi) The parent's special skills and training;

(vii) Whether there is evidence that the parent has the ability to earn the imputed income;

(viii) The age and special needs of the child for whom child support is being calculated under this section;

(ix) The parent's increased earning capacity because of experience;

(x) The parent's decreased earning capacity because of a felony

conviction;

(xi) Any other relevant factor.

{¶27} Appellant has a Bachelor's Degree in early childhood education and is licensed to teach. Vol. 1 T. at 84. She earns an hourly wage of $20 as a tutor. *Id.* The trial court specifically found appellant "has the ability to earn a substantial income," noting prior to earning her degree, she earned $54,000 a year working for the post office. The trial court imputed income of $25,000. As this court noted in *Snyder v. Snyder,* 5th Dist. Stark No. 2008CA00219, 2009-Ohio-5292, ¶ 37, citing *Winkelman v. Winkelman,* 7th Dist. Geauga No. 2008-G-2834, 2008-Ohio-6557, ¶ 22, "there is no 'magic language' requirement in deciding if an individual is voluntarily under employed or unemployed." We find the trial court's statements sufficiently comply with the mandate of R.C. 3119.01(C)(11).

{¶28} Appellant appears to argue that the trial court should have considered her unilateral decision to give up a higher paying job as a "best interest of the children event" as opposed to a change of lifestyle. Appellant voluntarily chose her career choice (teaching) with no guarantee of employment. Hopefully with the advent of the new school year following the July 2015 hearing, appellant will have obtained her desired employment. Up until then, it is inequitable to tax appellee based on appellant's employment choices.

{¶29} Upon review, we find the trial court did not abuse its discretion in imputing income to appellant.

{¶30} In its judgment entry filed August 4, 2015, the trial court ordered the following on the issue of the tax exemptions:

The residential parent shall take all the children as dependents for income tax purposes each year.

In determining whether taxes would be saved by allocating the federal tax dependency exemption to the non-custodial parent, the Court has reviewed all pertinent factors, including the parents' gross incomes, the exemptions and deductions to which the parents are otherwise entitled, and the relevant federal, state and local taxes rates.

{¶31} Appellant argues in granting appellee the tax exemptions, the trial court failed to determine the net tax savings for each party and their relative financial circumstances or needs.

{¶32} R.C. 3119.82 governs designation of parent who may claim children as dependents for federal income tax purposes and states the following in pertinent part:

If the parties agree on which parent should claim the children as dependents, the court shall designate that parent as the parent who may claim the children. If the parties do not agree, the court, in its order, may permit the parent who is not the residential parent and legal custodian to claim the children as dependents for federal income tax purposes only if the court determines that this furthers the best interest of the children and, with

respect to orders the court modifies, reviews, or reconsiders, the payments for child support are substantially current as ordered by the court for the year in which the children will be claimed as dependents. In cases in which the parties do not agree which parent may claim the children as dependents, the court shall consider, in making its determination, any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children.

{¶33} It is clear that based upon appellant's decreased income, the tax exemptions would not be a greater benefit to her in the best interest of the children.

{¶34} Upon review, we find the trial court did not abuse its discretion in assigning the tax exemptions to appellee.

{¶35} In its judgment entry filed August 4, 2015, the trial court ordered the following on the issue of providing health insurance to the children:

Private health insurance coverage is accessible and reasonable in cost through an employer provided plan available to Father. O.R.C. §3119.29(A)(4), O.R.C. §3119(A)(8). Therefore, Father shall provide health insurance coverage for the benefit of the children. In accordance with O.R.C. 3119.32(D), any hospital, medical, dental, vision, orthodontia or

psychological expense not covered by insurance, including co-payments and deductibles, shall be paid 50% by the Father and 50% by the Mother. While this allocation is not the Line 16 percentages, it is adjusted for the minimal income imputed to Mother.

{¶36} Appellant argues evidence was not presented on the parties' respective health insurance plans and the trial court should have permitted her to also provide health insurance for the children.

{¶37} Appellee testified he provides health insurance for the children through his employment and he has been employed with the Navy for almost nineteen years. Vol. 1 T. at 123, 125. Appellant testified she does not have health insurance through her employment, but through her husband's employment. *Id.* at 86. However, the children were not on her husband's insurance. *Id.*

{¶38} Upon review, we find the trial court did not err in prohibiting appellee from providing additional health insurance for the children.

{¶39} Assignment of Error III is denied.

{¶40} The judgment of the Court of Common Pleas of Stark County, Ohio, Family Court Division is hereby affirmed.

By Farmer, P.J.

Gwin, J. and

Wise, J. concur.

SGF/sg 125