[Cite as *Bardall v. Fisher*, 2018-Ohio-2477.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
HARRISON COUNTY

JENNIFER D. FISHER, NKA BARDALL,

Plaintiff, Appellee,

v.

DAVID C. FISHER,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 17 HA 0008.**

---

Civil Appeal from the
Court of Domestic Relations of Harrison County, Ohio
Case No. DRA-2011-0043.

**BEFORE:**
Gene Donofrio, Carol Ann Robb, Kathleen Bartlett, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Michael Johnson*, Johnson, Urban & Range Co., LPA, 117 South Broadway, New Philadelphia, Ohio 44663, for Plaintiff-Appellee.
*Atty. Joseph Kacyon and Atty. Rachel Smick*, Hoover Kacyon, LLC, 527 Portage Trail, Cuyahoga Falls, Ohio 44221, for Defendant-Appellant.

**Dated:**
June 22, 2018

**Donofrio, J.**

{¶1} Defendant-appellant, David Fisher, appeals from a Harrison County Common Pleas Court judgment denying his motions to hold plaintiff-appellee, Jennifer Bardall, in contempt and denying his motion to reallocate parental rights and responsibilities.

{¶2} The parties in this case were divorced on May 9, 2013. They share three children, G.F. (born in 2000), Z.F. (born in 2001), and H.F. (born in 2003). At the time of the divorce, the trial court designated appellee the residential parent. Appellant was to have supervised visitation with the goal of gradually moving to an unsupervised visitation schedule in conjunction with counseling and an increased relationship between appellant and the children. The children's guardian ad litem (GAL) agreed with this schedule.

{¶3} Over the next few years, appellant's visits changed to unsupervised and the duration of the visits increased. On February 12, 2016, in addressing appellant's motion to modify his parenting time to the court's standard visitation schedule, the trial court set out a new visitation schedule for the parties as follows. In March 2016, appellant was to have visitation for five hours once per weekend. In April 2016, the weekly visits were to increase to seven hours duration. In May 2016, the visits were to increase to nine hours duration from 9:00 a.m. until 6:00 p.m. every Sunday. In June 2016, the visits were to increase to 9:00 a.m. until 6:00 p.m. every Saturday and every other Sunday. Beginning July 30, 2016, the visits were to be from 9:00 a.m. on Saturday until noon on Sunday every other weekend. In addition to this schedule, the court's order stated that the children were not to communicate with appellee during appellant's visits except in the case of personal danger or injury. It also stated that the children were not to use their cell phones to record their visits.

{¶4} On May 27, 2016, appellee filed a multi-branch motion requesting, in part, a court order that appellant refrain from stalking her and the children.

{¶5} On June 3, 2016, appellant filed a motion to have appellee held in contempt of the court's February 12, 2016 order. Appellant alleged that appellee violated the court's visitation order by denying him visitation the weekend of April 9-10,

2016, and denying him visitation on May 15, 22, and 29, 2016.  Appellee responded by stating that while she encouraged the children to attend visits with appellant, the children were now teenagers and she could not physically force them to go.

{¶6}  The court re-appointed the children's GAL to investigate the matter.

{¶7}  On October 6, 2016, appellant filed another motion to have appellee held in contempt.   In this motion appellant reiterated his previous allegations and further alleged that appellee denied him visitation time on June 4, 5, 18, and 19, 2016; July 2, 3, 23, and 24, 2016; August 13 and 27, 2016; and September 10 and 24, 2016. Appellee asserted again that she encouraged the children to visit with appellant but that appellant's conduct was causing the children to refuse to go.

{¶8}  Next, appellant filed a motion for the release of all GAL reports.  Pursuant to court order, the GAL reports were kept confidential.  Appellant stated in his motion that he had retained an expert witness to conduct a "forensic psychological evaluation" and the GAL reports would give the expert a better understanding of the underlying issues in this case. Both appellee and the GAL objected to the release of the GAL reports.  The trial court denied this motion.

{¶9}  Appellant also served a subpoena on Caldwell Visitation Services (Caldwell), which is the agency that had monitored the supervised visits between appellant and the children years earlier, requesting all records from his visits with the children.  When Caldwell did not comply with the subpoena, appellant filed a motion to compel Caldwell's compliance.  The trial court denied this motion.

{¶10} Appellee then filed a motion to limit visits between appellant and the children to two dinner dates per month until the children felt more comfortable with appellant, as recommended by the GAL.

{¶11} Next, appellant filed a motion to reallocate parental rights and responsibilities to name both parties as the legal custodians and residential parents of the children.

{¶12} The trial court held a hearing on June 26, 2017, to address all pending motions.  The court heard testimony from both parties, the GAL, appellee's husband, and appellant's neighbor.  The court also interviewed the children in chambers.

{¶13} The trial court ultimately adopted appellee's proposed findings of fact and conclusions of law. The court then entered the following dispositions of the pending motions.  First, the court found that "[b]oth parties, by their prior actions, have put the children in the middle."  Therefore, it found there would be no finding of contempt and no finding of stalking.  Next, the court found there was insufficient evidence for a modification of parental rights and responsibilities.  Finally, the court stated that pursuant to the GAL's recommendation and its interviews with the children, it was modifying appellant's visitation to (1) a dinner date with the children every other Saturday and (2) one additional five-hour visit per month with each individual child.

{¶14} Appellant filed a timely notice of appeal on September 8, 2017.  He now raises five assignments of error.

{¶15} Appellant addresses his first two assignments of error together. Appellant's first assignment of error states:

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY NOT GRANTING DEFENDANT-APPELLANT'S JUNE 3RD, 2016 CONTEMPT MOTION.

{¶16} Appellant's second assignment of error states:

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY NOT GRANTING DEFENDANT-APPELLANT'S OCTOBER 6TH, 2016 CONTEMPT MOTION.

{¶17} In these two assignments of error, appellant contends that he established appellee failed to follow the court's visitation order.  He points to evidence that appellee interfered with his visitation by picking the children up early and contacting the children during his time, which was against the court's order.  Appellant contends the trial court abused its discretion in denying his contempt motions.

{¶18} We will not reverse a trial court's decision regarding contempt absent an abuse of discretion. *Faubel v. Faubel*, 7th Dist. No. 05-MA-101, 2006-Ohio-4679, ¶ 39, citing *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 11, 417 N.E.2d 1249 (1981). Abuse of discretion connotes more than an error of law or judgment; it implies the trial

court's judgment was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶19} In addition to appellant's two motions for contempt, appellee filed a multi-branch motion that included a request for the court to issue an order that appellant be prohibited from stalking her and the children. In ruling on these three motions, the trial court simply stated: "Both parties, by their prior actions, have put the children in the middle. There shall be no finding of contempt of court and further no finding of stalking."

{¶20} Pursuant to the February 12, 2016 order, appellant was to have overnight visitation with children starting July 30, 2016.

{¶21} Appellee testified that the overnight visits never occurred. (Tr. 11, 14). She stated that the day the first overnight visit was to occur, appellant's neighbor was at his house when she came to drop off the children. (Tr. 15). The neighbor's presence upset the children and a yelling match ensued. (Tr. 15-17). Appellee then took the children home. (Tr. 16). On the next-scheduled overnight visit, appellant picked up the children on Saturday morning and brought them to his house. (Tr. 17). Appellee stated later that evening the children texted her a picture of the middle child on the roof of the house and she immediately went and picked them up. (Tr. 17-18). On the subsequently-scheduled overnight visit weekends, appellant would pick the children up on Saturday morning and sometime Saturday evening they would text appellee to bring them home. (Tr. 18-19). Appellee always picked them up when they texted her. (Tr. 18-19).

{¶22} Appellee testified that the children found appellant's home to be "creepy," citing a "Criminal Minds" wall covered with sticky notes about them in addition to dirty conditions and beds that were too small with mouse droppings on them. (Tr. 11). Appellee stated the children also expressed concern over comments appellant made to them about the locks on the doors and his having the only key to get out. (Tr. 12).

{¶23} Appellee testified that the children have been visiting with appellant one day every other weekend. (Tr. 24). She stated that they refuse to spend the night at appellant's house. (Tr. 25). Appellee stated that she has encouraged them to spend the night but that at their ages of 14, 15, and 16 she could not force them to do so. (Tr. 25). She stated repeatedly that she has never denied appellant a visit. (Tr. 33-40).

Appellee also testified that appellant did in fact visit with the children on many of the days he denied doing so.  (Tr. 48-55).  And she stated that although she picked the children up on Saturday evenings, appellant never asked to have them back on Sunday mornings.  (Tr. 52-53).

**{¶24}** Appellant, however, testified that appellee consistently denied him visitation. He claimed that appellee denied him seven hours of visitation in April 2016, and 27 hours of visitation in May 2016.  (Tr. 145-146).  Appellant went on to state that appellee denied him 36 hours in June 2016; 52 hours in July 2016; 59 hours in August 2016; 41 hours in September 2016; and 59 hours in October 2016.  (Tr. 146-156).  Appellant admitted that he has never gone to pick the kids up or asked to visit them on a Sunday morning after appellee has brought them home on a Saturday night.  (Tr. 185).

**{¶25}** A trial court has broad discretion to determine whether someone has violated its own order.  *In re Ayer*, 119 Ohio App.3d 571, 576, 695 N.E.2d 1180 (1st Dist.1997).  Moreover, the trial court has inherent power to determine the kind and the character of conduct that constitutes contempt.  *Id.*, citing *State ex rel. Turner v. Albin*, 118 Ohio St. 527, 535, 161 N.E. 792 (1928).  Thus, we apply a "highly deferential" standard in reviewing a trial court's ruling on a contempt motion because the trial court has heard the evidence and is familiar with the terms of its own order.  *Burke v. French*, 5th Dist. No. 14CA1, 2014-Ohio-3217, ¶ 27.

**{¶26}** It is difficult under this highly deferential standard of review to conclude that the trial court abused its discretion in overruling appellant's contempt motions. Much of the evidence as to visitation was disputed.  Appellant testified that appellee denied him a great number of visits.  Appellee testified that she has never denied appellant a visit.  It was a matter of credibility for the trial court to determine whether appellee actually denied appellant the visits he claimed she denied him.  Because the trial court was faced with a credibility determination as to whether appellee willfully denied appellant visits we cannot conclude the trial court abused its discretion in overruling appellant's contempt motions.  Moreover, given that the trial court has the inherent power to determine the kind and the character of conduct that constitutes

contempt, it was within the trial court's discretion to overrule appellant's contempt motions.

**{¶27}** Accordingly, appellant's first assignment of error is without merit and is overruled. Likewise, appellant's second assignment of error is without merit and is overruled.

**{¶28}** Appellant's third assignment of error states:

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FAILING TO TAKE R.C. 3109.051(D) INTO CONSIDERATION AND MODIFYING APPELLANT'S PARENTING TIME.

**{¶29}** Here appellant asserts the trial court did not properly consider the R.C. 3109.051(D) factors that a court should consider when ruling on visitation matters. He contends that a close consideration of the factors should not lead to a decrease in his visitation time as ordered by the trial court. Appellant claims there is no indication in the record that the trial court considered the statutory factors before it modified his visitation.

**{¶30}** R.C. 3109.051 governs the modification of visitation rights. *Braatz v. Braatz*, 85 Ohio St.3d 40, 44, 1999-Ohio-203, 706 N.E.2d 1218. Pursuant to R.C. 3109.051(D), the trial court shall consider the 15 factors set out therein and, in its sound discretion, determine visitation that is in the children's best interest. *Id.* at 45. Thus, we review a trial court's decision to modify visitation for abuse of discretion.

**{¶31}** The factors set out in R.C. 3109.051(D) are:

(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity * * *;

(2) The geographical location of the residence of each parent and the distance between those residences * * *;

(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;

(4) The age of the child;

(5) The child's adjustment to home, school, and community;

(6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent * * * the wishes and concerns of the child, as expressed to the court;

(7) The health and safety of the child;

(8) The amount of time that will be available for the child to spend with siblings;

(9) The mental and physical health of all parties;

(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights * * *;

(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(12) In relation to requested companionship or visitation by a person other than a parent, * * *;

(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

<u>Case No. 17 HA 0008</u>

(14) Whether either parent has established a residence or is planning to establish a residence outside this state;

(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;

(16) Any other factor in the best interest of the child.

{¶32} In this case, the trial court did not specifically address the factors in its judgment entry. But the court did state that it adopted the proposed findings of fact and conclusions of law filed by appellee.

{¶33} It would be a better practice for the trial court to specifically address the R.C. 3109.051(D) factors. But by adopting appellee's findings of fact the trial court did address many of the statutory factors as can be seen by the following findings.

{¶34} The GAL submitted a December 2016 addendum report and testified. The GAL testified that visits between appellant and the children had become "toxic." She recommended that the court limit visitation to bi-monthly dinner dates with the possibility of an extended visit if the dinner date went well. (R.C. 3109.051(D)(1), (16)).

{¶35} Douglas Darnall, appellant's expert witness, testified that he did not have an opinion in this particular case given that he did not have enough information since he did not interview the children and others involved.

{¶36} During one visit at appellant's house, the children saw court papers and sticky notes covering a wall and outlining their activities. The children thought appellant was spying on them. The visit did not end well. (R.C. 3109.051(D)(1)).

{¶37} Due to other activities, the children have declined to visit with appellant on various occasions. (R.C. 3109.051(D)(3)).

{¶38} Appellee testified that she encourages the children to visit with appellant but she cannot force them to stay overnight or to have extra time with him due to their ages. (R.C. 3109.051(D)(4), (10), (13)).

{¶39} On Saturdays when the children want to return home, they text appellee to pick them up if appellant does not want to take them home. Appellee testified there is always some drama and she picks the children up. Appellant was unable to testify that

he has requested to pick the children up on a Sunday when they refused to spend Saturday night at his home. (R.C. 3109.051(D)(10), (13)).

{¶40} Visitation is limited to two dinner dates per month, which may be expanded if the dinner date goes well, based on the recommendation of the GAL and the court's interviews with the children. (R.C. 3109.051(D)(6)).

{¶41} Moreover, several of the R.C. 3109.051(D) factors do not apply to this case. (R.C. 3109.051(D)(11), (12), (14), (15)).

{¶42} Thus, despite appellant's allegation to the contrary, the trial court did consider the statutory factors before modifying his visitation.

{¶43} Accordingly, appellant's third assignment of error is without merit and is overruled.

{¶44} Appellant's fourth assignment of error states:

> THE TRIAL COURT ERRED BY NOT ENFORCING A LEGALLY ISSUED SUBPOENA DUCES TECUM AND THEREBY DENYING APPELLANT INFORMATION IT NEEDED IN ORDER TO PROSECUTE ITS CASE AND ENSURE DUE PROCESS.

{¶45} Appellant sent a subpoena to Caldwell, seeking records from his previous supervised visits with the children. Caldwell did not respond. Appellant then filed a motion to compel, which the trial court denied. Appellant now argues that the trial court should have compelled Caldwell to comply with his subpoena.

{¶46} Absent an abuse of discretion, an appellate court must affirm a trial court's ruling on a motion to compel. *Bank of New York Mellon for Certificate Holders CWABS, Inc. Asset-Backed Certificates, Series 2005-12 v. Broyles*, 7th Dist. No. 16 MA 0093, 2018-Ohio-357, ¶ 34, citing *State ex rel. The V Cos. v. Marshall*, 81 Ohio St.3d 467, 469, 1998-Ohio-329, 692 N.E.2d 198.

{¶47} The Caldwell visitations occurred prior to the trial court's February 12, 2016 judgment entry, which governed the parties' parenting schedule at the time they filed their most recent motions. The motions at issue were appellant's two contempt motions, appellant's motion to reallocate parental rights and responsibilities to name both parties as the legal custodians and residential parents of the children, appellee's

Case No. 17 HA 0008

motion to prohibit appellant from stalking her and the children, and appellee's motion to limit appellant's visits to two dinner dates per month. Each of the five motions addressed recent events between the parties and the children. Thus, the trial court acted within its discretion in denying appellant's motion to compel Caldwell to release records of his pre-February 2016 visits.

{¶48} Accordingly, appellant's fourth assignment of error is without merit and is overruled.

{¶49} Appellant's fifth assignment of error states:

THE TRIAL COURT ERRED BY NOT RELEASING GUARDIAN AD LITEM REPORTS TO APPELLANT'S EXPERT WITNESS WHICH DENIED APPELLANT THE OPPORTUNITY TO HAVE AN INFORMED EXPERT AND THEREFORE DENIED APPELLANT DUE PROCESS.

{¶50} Appellant filed a motion to compel the release of all GAL reports, which pursuant to court order were kept confidential. Appellant asserted he had retained an expert witness to conduct a "forensic psychological evaluation" and the GAL reports would give the expert a better understanding of the underlying issues in this case. Appellee and the GAL objected to the release of the reports. The trial court denied appellant's motion.

{¶51} In his final assignment of error, appellant argues it was error for the trial court not to permit his expert to review the GAL's reports.

{¶52} Sup.R. 48 governs guardians ad litem. The duty of a GAL is to protect and act in the best interest of a child. Sup.R. 48(A). GALs have numerous duties spelled out in the Rule that are meant "to provide the court with relevant information and an informed recommendation regarding the child's best interest[.]" Sup.R. 48(D). In domestic relations proceedings involving the allocation of parental rights and responsibilities, the GAL's report shall be filed with the court and made available to the parties for inspection no less than seven days before the final hearing. Sup.R. 48(F)(2). "Written reports may be accessed in person or by phone by the parties or their legal representatives." Sup.R. 48(F)(2).

**{¶53}** According to the Ohio Rules of Superintendence, a GAL's duty is to act in the child's best interest and to provide the court with relevant information and an informed decision on the child's best interest. Parties and their attorneys are entitled to read the GAL's reports. The Rule does not address making GAL reports available to other witnesses. Doing so is not within the scope of the GAL's duties nor does it comply with the scope of the GAL's role of protecting the child and aiding the court. Thus, the trial court did not abuse its discretion in denying appellant's motion to compel the release of the GAL reports to his expert witness.

**{¶54}** Accordingly, appellant's fifth assignment of error is without merit and is overruled.

**{¶55}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Robb, P. J., concurs

Bartlett, J., concurs

_____

For the reasons stated in the Opinion rendered herein, the five assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Domestic Relations of Harrison County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be send by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**