[Cite as *Mees v. Mees*, 2015-Ohio-5127.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| RUTH C. MEES, | : | APPEAL NO. C-150033<br>TRIAL NO. DR-1001597 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| HOWARD L. MEES, | : | |
| Defendant-Appellant, | : | |
| and | : | |
| MEES DISTRIBUTORS, INC., et al., | : | |
| Defendants. | | |

Appeal From:  Hamilton County Court of Common Pleas, Domestic Relations Division

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  December 11, 2015

*Sarah C. Sanderson* and *Barbara J. Howard*, for Plaintiff-Appellee,

*Allyson T. Cook* and *John J. Krupp*, for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

**DEWINE, Judge.**

{¶1}    This is an appeal from a contempt finding in a domestic-relations matter.  Howard and Ruth Mees continued to jointly own certain properties and a company following their divorce.  The decree required that Howard not do anything to impact the "rental income" from the properties without Ruth's consent.  Soon after the divorce was final, Howard altered the mortgage payments made by the company on the properties.  The change in mortgage payments had the effect of significantly increasing the amount of rental income of Ruth that was reported to the IRS.  We conclude that in these circumstances, the trial court did not err in holding Howard in contempt.

### I. Background

{¶2}    Ruth and Howard were divorced in 2012.  They jointly own three properties, which are located in Elmore Place, Dayton, and Columbus ("the Properties").  They also own a business, Mees Distributors, Inc., ("the Company"), which pays rent to Ruth and Howard for use of the Properties.  Howard, apparently, is in control of the operation of the Company.  Under the terms of the divorce decree, the Properties and the Company are to be sold, but this has not yet been accomplished.  The divorce decree incorporated an agreed entry that dealt with property issues.  The agreed entry dictated that "[n]either party shall do any acts which will impact the current business value, real estate value or rental income without agreement of both parties."

{¶3}    Pursuant to the agreed entry, Ruth and Howard were to divide the rental income from the Properties equally.  Additionally, each would claim half of the rental income and half of the expenses on their tax returns.  The divorce decree sets out specific amounts Howard was receiving from each of the Properties as of June 2012.

{¶4}     In addition to the rental payments paid directly to Ruth and Howard, the Company also made mortgage payments on the Properties. Because Ruth and Howard owned the Properties, the Company treated these payments as rental payments for tax purposes.

{¶5}     After the decree was entered, Howard caused the Company to increase the mortgage payments it made on the Properties. The Company went from making "interest only" payments on the bank loans to also paying down the principal.

{¶6}     Pursuant to the terms of the decree, for the first half of 2013, the Company paid the rental payments to Howard, and then Howard forwarded one-half of the rental payments to Ruth. At Ruth's request, the method of payment was changed in the middle of 2013, so that, for the second half of 2013, Ruth received the rental payments directly. Howard issued two IRS Forms 1099 ("1099") to Ruth for the first half of 2013 that reflected the amount of rental payments that he had forwarded to her.

{¶7}     For the second half of 2013, the Company issued 1099s to Ruth to reflect its rental payments. These 1099s included as rental payments both the amounts of cash that the Company was paying to Ruth and also one-half of the mortgage payments that the Company was making to the bank on her behalf. As a result of the inclusion of these mortgage payments, Ruth's rental income increased by $111,495.32. Thus, she faced a significantly greater tax liability.

{¶8}     Unhappy with this additional tax liability, Ruth filed a motion for contempt, accountant fees, and attorney fees. At the hearing before the trial court, Ruth argued that Howard had violated the terms of the decree by causing the Company to increase its mortgage payments and issue 1099s to Ruth that characterized the mortgage payments as rental income. Ruth presented testimony from her accountant who asserted that the principal payments should be treated as loans from the Company that

3

would be repaid upon the sale of the Properties. The Company's accountant testified that the principal payments were properly characterized as rental income.

{¶9} The trial court granted Ruth's motion for contempt. The court ordered that to purge the contempt, Howard should cause corrected 1099s to be issued to Ruth that did not include the principal payments as rental income. The issues of accountant and attorney fees were reserved for a future hearing. Howard moved for a stay of the court's order pending appeal. The trial court denied the motion for a stay. Howard's appeal of the contempt finding is now before us.

## II. Contempt

{¶10} In a single assignment of error, Howard argues that the trial court erred by finding him in contempt, because Ruth failed to establish by clear and convincing evidence that the divorce documents mandated interest-only mortgage payments. Ruth argues that Howard violated the terms of their decree when he caused the Company to make principal payments on the Properties, which impacted their rental income without her consent. Based on a reading of the agreed entry, divorce decree, and the record, we agree.

{¶11} To establish civil contempt, the party seeking to enforce a court order must show by clear and convincing evidence that a court order exists and that the nonmoving party has not complied with the terms of that order. *Wolf v. Wolf*, 1st Dist. Hamilton No. C-090587, 2010-Ohio-2762, ¶ 4. A trial court's finding a party to be in contempt will not be reversed absent an abuse of discretion. *Id.* When interpreting a divorce decree that incorporates a settlement agreement, courts apply the general rules of contract interpretation. *Shrader v. Henke-Shrader*, 1st Dist. Hamilton No. C-130162, 2013-Ohio-5894, ¶ 9. We review the interpretation of a divorce decree de novo. *Shrader* at ¶ 9.

**{¶12}** Here, the decree unambiguously provides that Howard was not to do any act that impacted the "rental income" without Ruth's consent. The change to principal payments substantially increased Ruth's rental income as reported by the Company on the 1099 forms. Thus, the trial court did not err in finding that Howard violated the terms of the agreed entry. The effect of the violation was that Ruth was left with an unexpected tax liability with no additional cash flow to pay that liability. In these circumstances, we conclude that the trial court did not abuse its discretion in finding Howard in contempt.[1] The assignment of error is overruled.

### III. Conclusion

**{¶13}** We affirm the trial court's judgment.

Judgment affirmed.

**CUNNINGHAM, P.J.,** and **MOCK, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.

---

[1] We note that Howard has not challenged on appeal the appropriateness of the purge conditions imposed by the trial court. Thus, we express no opinion as to the appropriateness of the purge conditions or the proper tax treatment of the mortgage payments made by the Company on behalf of Howard and Ruth.