[Cite as *Bohannon v. Lewis*, 2022-Ohio-2398.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| ROBERT BOHANNON II, | : | APPEAL NOS. C-210316 |
| | | C-210332 |
| Plaintiff-Appellee/ | : | TRIAL NO. DR-1801471 |
| Cross-Appellant | | |
| | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | : | |
| NYSHIA LEWIS (f.k.a. BOHANNON) | | |
| | : | |
| Defendant-Appellant/ | | |
| Cross-Appellee. | : | |

Appeal From: Hamilton County Court of Common Pleas, Domestic Relations
    Division

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: July 13, 2022

*Cordell Law, LLP*, and *Samuel D. Patry*, for Plaintiff-Appellee/Cross-Appellant,

*DeBra Law, LLC*, and *Ryan L. DeBra,* for Defendant-Appellant/Cross-Appellee.

**CROUSE, Judge.**

**{¶1}** Defendant-appellant and cross-appellee Nyshia Lewis ("mother") appeals the judgment of the Hamilton County Court of Common Pleas, Domestic Relations Division, raising two assignments of error for our review. Plaintiff-appellee and cross-appellant Robert Bohannon II ("father") cross-appeals from the same judgment, raising two assignments of error of his own. For the reasons that follow, we overrule the assignments of error and affirm the judgment of the trial court.

### *Facts and Procedure*

**{¶2}** Mother and father were married in 2009 and have four minor children together: one son and three daughters. Father filed a complaint for divorce in 2018. A decree of divorce was entered in 2019, which named mother residential parent and legal custodian of all four children. Father had parenting time on alternating weekends from Friday after school or daycare until Monday morning, and on Wednesday evenings, in addition to holiday and extended parenting time in line with the court's standard parenting order. Father was also ordered to pay child support in the amount of $1,231.22 per month.

**{¶3}** While there has been nearly continuous conflict in this case since the complaint for divorce was filed, the procedural events relevant to these appeals began on May 15, 2020, when father filed a motion to modify parenting time. On the same day, he filed a "motion to show cause (contempt)," alleging that mother denied him parenting time and withheld the children's medical information. On June 9, 2020, mother filed a "motion for contempt/back child support,"[1] alleging father had been harassing her and

---

[1] While the motion references child support in its title, mother did not reference the child-support issue in the body of her motion.

not abiding by the court order for parenting time. On July 28, 2020, father filed a motion for an emergency hearing and temporary custody, and an "amended motion to modify parenting time—motion to reallocate parental rights and responsibilities," asking the court to name him the residential parent and legal custodian of the children.

{¶4} Shortly after the motions were filed, the court ordered a full parenting investigation. Patrick Magill, a social worker, conducted the investigation and issued a report that recommended that mother maintain her status as residential parent and legal custodian of the children. It also recommended increasing father's parenting time by giving him four additional overnights—Wednesdays and Thursdays following his weekends with the children—every four weeks. The report discussed the acrimonious nature of mother and father's relationship and noted that the children are "undoubtedly experiencing the effects of their parents' conflicts." The report recommended that mother "should get the children into counseling as soon as possible."

{¶5} The court held a two-day hearing on these issues on April 13, 2021, and April 27, 2021. Mother and father each testified on their own behalf. The court also heard testimony from the social worker, along with father's wife, and a parent who had observed the family's interactions at youth football games.

{¶6} In an April 28, 2021 entry, the court granted in part father's amended motion to modify parenting time—motion to reallocate parental rights and responsibilities; and denied the other motions. The court ordered that mother remain the residential and custodial parent, but it increased father's parenting time to "alternating weeks from Friday after school or daycare * * * until the following Friday," with no extended

time. The court also deviated father's child-support obligation down to $0 per month in light of the equal share of parenting time.

**{¶7}** Mother timely appealed, and father cross-appealed.

**{¶8}** In two assignments of error, mother contends that the parenting-time modification is not in the best interest of the children, and that the child-support deviation was an abuse of discretion.

**{¶9}** In two assignments of error, father contends that the court erred by denying his motion to show cause, and in denying in his motion to reallocate custody.

**{¶10}** For ease of discussion, we will address these assignments out of order.

### *Father's Second Assignment of Error: Child Custody*

**{¶11}** In his second assignment of error, father contends that the trial court's denial of his motion to reallocate custody was inconsistent with the court's findings because the manifest weight of the evidence supported each of the necessary factors under R.C. 3109.04(E)(1)(a).

**{¶12}** A parent's motion to modify a parenting decree is governed by R.C. 3109.04(E)(1)(a). The statute provides that the court shall not modify a decree unless:

> (1) there has been a change in circumstances since the prior decree, based on facts that have arisen since the prior decree or were unknown by the court at the time of the prior decree;
>
> (2) the modification is necessary to serve the best interest of the children; and
>
> (3) one of the conditions in R.C. 3109.04(E)(1)(a)(i)-(iii) is satisfied.

*Saylor v. Saylor* 1st Dist. Hamilton No. 190463, 2020-Ohio-3647, ¶ 12, citing R.C. 3109.04(E)(1)(a). The parties agree that the relevant condition under (3) is "the harm

4

likely to be caused by a change in environment is outweighed by the advantages of the change of environment to the child."

**{¶13}** "R.C. 3109.04(E)(1)(a) creates a rebuttable presumption that retaining the residential parent designated by the prior decree is in the child's best interest." *Rohrbaugh v. Rohrbaugh*, 136 Ohio App.3d 599, 604-605, 737 N.E.2d 551 (7th Dist.2000).

**{¶14}** " 'Custody issues are some of the most difficult and agonizing decisions a trial judge must make. Therefore, a trial judge must have wide latitude in considering all the evidence before him * * * and such a decision must not be reversed absent an abuse of discretion.' " *Saylor* at ¶ 10, quoting *Kane v. Hardin*, 1st Dist. Hamilton No. C-180525, 2019-Ohio-4362, ¶ 6, quoting *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). An abuse of discretion "implies that the trial court's decision was unreasonable or arbitrary." *Kane* at ¶ 6, citing *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶15}** " 'A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court.' " *In re E.R.,* 1st Dist. Hamilton No. C-180615, 2019-Ohio-4491, ¶ 5, quoting *Davis* at 419. "The reason for this standard of review is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis* at 418. In this way, we "should be guided by the presumption that the trial court's findings were indeed correct." *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988).

**{¶16}** First, a change in circumstances must be found. "The change 'must be a change of substance, not a slight or inconsequential change.' " *In re E.R.* at ¶ 6, quoting *Davis*

at 418. The change does not need to be "substantial," but it "must be substantiated, continuing, and have a materially adverse effect upon the child." *Id.*, quoting *Davis* at 417. A change in circumstances can be demonstrated by a "custodial parent's interference with a noncustodial parent's visitation, and the parents' inability to communicate and cooperate." *Id.* at ¶ 7 (collecting cases). This requirement is intended to " 'spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the children a "better" environment.' " *Souders v. Souders*, 1st Dist. Hamilton No. C-210469, 2022-Ohio-1953, ¶ 7, citing *Davis* at 418, quoting *Wyss v. Wyss*, 3 Ohio App.3d 412, 416, 445 N.E.2d 1153 (10th Dist.1982).

{¶17} In its entry, the court did not make an explicit finding about a change in circumstances, though it made several findings relevant to the determination, including that "[m]other has withheld medical information from Father that could have serious repercussions during his parenting time and could have negatively impacted the child." The court further found that "mother has routinely denied and thwarted Father his parenting time. The excuses for these incidents are so egregious, it appears that mother believes there are no repercussions to her behavior."

{¶18} Testimony was presented about several instances where medical information was not shared with father after one of their children was injured, including: an ankle injury, a dog bite, a concussion, and a chipped tooth. Mother admitted that she did not share discharge instructions with father about the concussion, but testified that she did share information about the ankle injury and the dog bite. Mother also disputed portions of the chipped-tooth incident, testifying that she had an appointment scheduled to address the issue. Moreover, testimony was presented

6

about mother denying father his parenting time, though father also admitted missing opportunities for parenting time in the past.

**{¶19}** Father argues that this evidence sufficiently demonstrates a change in circumstances. While we do not have the benefit of an explicit determination from the trial court on this factor, we assume that the court did find a change in circumstances based on its findings of fact and the fact that the court's entry concentrated on the best-interest factors. *See Nigro v. Nigro*, 9th Dist. Lorain No. 04CA008461, 2004-Ohio-6270, ¶ 6 ("[W]e find it inappropriate to require the court to use the exact phrase 'change of circumstances.' While the better practice would be for a court to explicitly find a change of circumstances before delving into the issue of the best interests of the child, we will affirm a decision where the factual findings of the court support a finding of changed circumstances. Explicit language is preferable, but not necessary.").

**{¶20}** After finding a change in circumstances, the court must determine whether a modification is in the best interest of the children. "[T]he court shall consider all relevant factors, including, but not limited to:"

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers * * * regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent * * * has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; * * * whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

R.C. 3109.04(F)(1).

{¶21} In its entry, the court set forth findings of fact regarding all of the best-interest factors listed in R.C. 3109.04(F)(1). The court also included the recommendation of the social worker, along with additional findings about the volatile nature of mother

8

and father's relationship. The court noted that "Mother's interactions with the children around Father show that she is not looking out for their best interests." However, the court also noted that "Father is not consistent in exercising his regular parenting time[2] [and] creates just as much drama at interactions as Mother." The court found that, "[t]hese children should have and are desperate for two parents who act like adults instead of spoiled children unable to refrain from creating drama after drama." We find that the testimony presented at trial supports these findings.

{¶22} While the court did not explicitly state that father failed to rebut the presumption that retaining the residential parent designated by the prior decree is in the child's best interest, that is what the court ultimately found by denying father's motion to reallocate parental rights and responsibilities.

{¶23} Father argues that the court erred in this regard because the best-interest findings of the court and the social worker favor father receiving custody of the children.

{¶24} However, we find that the court's best-interest findings and the report of the social worker demonstrate that this case is a close call. While the findings and report support father's contention that his communication has been more effective and that he is more invested in taking steps to address the mental health of the children, it also supports the determination that mother is a dedicated parent who has, in the words of the social worker, "provided the lion's share of care for the children." In addition, the findings and report demonstrate that while mother had denied parenting time in the

---

[2] Father testified about missing approximately four opportunities for weekday parenting time due to his work schedule. Mother testified about an incident where a dispute about the pickup location led to father not picking the children up, and another occasion where he returned the children earlier than planned.

past, father had not been consistent in exercising his allotted parenting time. While father has raised concerns regarding mother's criminal history, father testified about a pending criminal matter of his own at the time of trial. And while father raised concerns about mother's behavior around the children, mother testified that father sent her a photo of himself holding a gun to his head, which she alleged he had shown to their son. Moreover, father testified about the close quarters in his home, explaining that when his four children stay with him, there are a total of nine children sleeping in his four-bedroom home.

**{¶25}** This court cannot reverse a decision simply because we may have decided differently. Rather, we must only determine whether the trial court abused its discretion. Not only did the trial court include numerous findings of fact in its entry, but it also considered the report of the social worker and two days' worth of testimony. The record clearly demonstrates that the court considered each of the necessary best-interest factors and the court's findings were supported by the record. While the court certainly made its frustration with the parents' behavior clear in its entry, it nevertheless carefully analyzed and weighed the best-interest factors and ultimately found that mother should remain the sole residential parent and legal custodial parent of the minor children. We cannot say the court's decision was unreasonable or arbitrary.

**{¶26}** While the court did not make a specific determination regarding each of the three factors under R.C. 3109.04(E)(1)(a), it was not an abuse of discretion for the court to deny father's motion to reallocate custody. Because the court's decision is well-supported in the record, and in light of the "rebuttable presumption" in favor of

the residential parent retaining custody of the children, we overrule father's second assignment of error.

### *Mother's First Assignment of Error: Parenting Time*

{¶27} In her first assignment of error, mother contends that, "[t]he trial court decision allocating parenting time was not consistent with the best interest of the minor children and Ohio Revised Code Section 3109.04." We review the trial court's judgment on modifications to parenting time for an abuse of discretion. *Souders v. Souders,* 1st Dist. Hamilton No. C-210469, 2022-Ohio-1953, ¶ 6, citing *Cwik v. Cwik*, 1st Dist. Hamilton No. C-090843, 2011-Ohio-463, ¶ 42. "The trial court has broad discretion in modifying visitation rights." *In re Ross*, 154 Ohio App.3d 1, 2003-Ohio-4419, 796 N.E.2d 6, ¶ 5 (1st Dist.), citing *Appleby v. Appleby*, 24 Ohio St.3d 39, 492 N.E.2d 831 (1986).

{¶28} As an initial matter, we note that the trial court and the parties rely on R.C. 3109.04(E)(1)(a) for the parenting-time analysis. However, "when one parent is the legal custodian, modifications to visitation or parenting time are not governed by R.C. 3109.04(E)(1)(a). Rather, such modifications are subject to R.C. 3109.051." *Hartman v. Hartman*, 8th Dist. Cuyahoga No. 107251, 2019-Ohio-1637, ¶ 16; *Braatz v. Braatz,* 85 Ohio St.3d 40, 43, 706 N.E.2d 1218 (1999), paragraph one of the syllabus (holding the "[m]odification of visitation rights is governed by R.C. 3109.051").

{¶29} Therefore, mother's first assignment of error is properly analyzed under R.C. 3109.051 because a modification to visitation or parenting time for a noncustodial parent, father, is at issue.

**{¶30}** In determining whether to modify parenting time, a change in circumstances is not required.[3]  *Braatz* at paragraph two of the syllabus.  Rather, the court must determine whether the modification is in the children's best interest, considering the best-interest factors set forth in R.C. 3109.051(D). *In re Ross,* at ¶ 5, citing *Braatz* at paragraph two of the syllabus.  These best-interest factors include, in relevant part:

(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, * * *;

(2) The geographical location of the residence of each parent and the distance between those residences, * * *;

(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;

(4) The age of the child;

(5) The child's adjustment to home, school, and community;

(6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child * * *;

(7) The health and safety of the child;

(8) The amount of time that will be available for the child to spend with siblings;

(9) The mental and physical health of all parties;

---

[3] Likewise, mother's argument that there was no evidence about the harm caused by the change of environment is irrelevant because R.C. 3109.051 does not include this consideration.

(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;

(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; * * *;

* * *

(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(14) Whether either parent has established a residence or is planning to establish a residence outside this state;

* * *

(16) Any other factor in the best interest of the child.

R.C. 3109.051(D).

**{¶31}** While the trial court specifically analyzed the best-interest factors listed in R.C. 3109.04(F)(1) rather than R.C. 3109.051(D), courts have held that the factors set forth in the two sections are quite similar and reliance on the factors in the wrong section is harmless error when the trial court's decision demonstrates consideration of the relevant factors. *See, e.g., Campana v. Campana*, 7th Dist. Mahoning No. 08 MA 88, 2009-Ohio-796, ¶ 3-4 (Despite the fact that the trial court only cited and reviewed the best-interest factors listed in the custody statute (R.C. 3109.04(F)(1)), the appellate

13

court held that "because of the detail of the court's entry," it could "conclude that the court considered a multitude of facts that coincide with all of the pertinent best interest factors applicable to visitation modifications as contained in R.C. 3109.051(D)."); *In re Troyer*, 188 Ohio App.3d 543, 2010-Ohio-3276, 936 N.E.2d 102, ¶ 36 (7th Dist.) (holding trial court's reliance on R.C. 3109.04(F)(1) factors to be harmless where trial court's decision "evince[d] consideration of the relevant factors"); *Braden v. Braden*, 11th Dist. Portage No. 2006-P-0028, 2006-Ohio-6878, ¶ 38 (holding that the two sets of factors are "essentially the same" and affirming the parenting-time decision of the trial court despite its reference to R.C. 3109.04 because the pertinent factors were still considered).

**{¶32}** In its entry, the court considered the following best-interest factors: the wishes of the parents; the parents' intent to relocate; a child-support arrearage; the ages of the children; the children's relationship with their siblings and family; the children's adjustment to home, school, and community; the mental and physical health of the parties; mother's denial of parenting time and withholding of medical information; and mother's willingness to comply with the court's orders in the future. While the court made these best-interest findings under R.C. 3109.04(F)(1), these findings are also pertinent to a proper best-interest analysis under R.C. 3109.051(D).

**{¶33}** The court also incorporated the summary and recommendation of the social worker into its entry. In addition to recommending an increase to father's parenting time, the summary and recommendation included discussion about the mental and physical health of the children pursuant to R.C. 3109.051(D)(7). *See Braden* at ¶ 45-47 (relying on a home-study evaluation and guardian ad litem reports to supply additional findings not explicitly mentioned by trial court). The court did not include

findings under R.C. 3109.051(D)(2), (3), (8), but both parties testified at length about the pickup arrangements and work schedules, pursuant to R.C. 3109.051(D)(2) and (3). And R.C. 3109.051(D)(8) is largely irrelevant to this case as the schedule provides that the children always remain together. Moreover, "[i]t is well-established that a laundry list of the factors is not required." *Campana* at 56.

{¶34} Mother agrees that the testimony demonstrated that the parties had a strained relationship. However, she claims that the evidence did not support such a drastic change in the parenting-time schedule, especially when the court "placed the blame equally upon both Mother and Father."

{¶35} While we agree that the court found both mother and father to be at fault for their volatile relationship, the court also found that mother was denying parenting time and withholding medical information from father. Moreover, in line with the social worker's recommendations, father testified that he has taken steps to address the children's mental health, and was working to improve his coparenting skills. All of this evidence was relevant in supporting the court's determination that it is in the children's best interest to increase father's parenting time.

{¶36} We do not hold that the factors in R.C. 3109.051(D) and 3109.04(F)(1) are always interchangeable, but the record demonstrates that the court considered the pertinent factors for this case listed in R.C. 3109.051(D).

{¶37} Based on the evidence presented, the court's decision to increase father's parenting time was not an abuse of discretion. Mother's first assignment is overruled.

### *Mother's Second Assignment of Error: Child Support*

{¶38} In her second assignment of error, mother argues that the court erred by deviating father's child-support obligation by 100 percent because it was not

15

supported by competent and credible evidence and was against the manifest weight of the evidence. She also contends the trial court erroneously "imputed the same figures used in the 2019 Decree of Divorce for purposes of calculating child support in the 2021 matter."

{¶39} We will not disturb a trial court's decision regarding child support absent an abuse of discretion. *Rummelhoff v. Rummelhoff*, 1st Dist. Hamilton Nos. C-210112 and C-210176, 2022-Ohio-1224, ¶ 18, quoting *Rummelhoff v. Rummelhoff,* 1st Dist. Hamilton No. C-190355, 2020-Ohio-2928, ¶ 30, citing *Booth v. Booth,* 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989).

{¶40} First, a review of the record and of the child-support worksheet reveals that that the income was correctly attributed to each party. Mother's income sources match her 2020 Form W-2 and 2020 Form 1099 exactly. Father's income is supported by his 2020 end-of-year paystub and Form W-2 after taking into account deductions for nonrecurring income, which father testified about. *See* R.C. 3119.01(C)(12)(e) and 3119.01(C)(13) (stating that gross income does not include nonrecurring income where nonrecurring income is income received for less than three years that the parent does not expect to receive on a regular basis); *Arcuri v. Arcuri*, 1st Dist. Hamilton No. C-990802, 2000 Ohio App. Lexis 5081, *12 (Nov. 3, 2000) (holding that nonrecurring income was correctly excluded from gross income "because nonrecurring cash flow cannot be considered gross income").

{¶41} Next, mother contends that the "court's decision to deviate Father's child support obligation by 100% was not supported by competent and credible evidence."

{¶42} After determining the guideline support amount, the court may deviate from the guideline amount if it determines that the amount "would be unjust or

16

inappropriate and therefore not be in the best interest of the child" based on the factors in R.C. 3119.23. R.C. 3119.22. "This determination 'must be supported by findings of fact and must be journalized.' " *Rummelhoff,* 2022-Ohio-1224 at ¶ 19, quoting *Carr v. Blake*, 1st Dist. Hamilton No. C-990174, 2000 Ohio App. LEXIS 557, * 14 (Feb. 18, 2000), citing *Marker v. Grimm*, 65 Ohio St.3d 139, 601 N.E.2d 496 (1992), paragraph three of the syllabus.

**{¶43}** Situations like this one, where parenting time is split between two parties, are specifically contemplated in the statute. Essentially, the statute provides that as the obligor's parenting time increases, the court may deviate the child-support obligation downward. The Second District has distilled these "deviation thresholds" as follows:

> (1) 90 or more overnights mandates a 10% downward adjustment to child support without any consideration of other deviation factors (R.C. 3119.051);
>
> (2) 91 or more overnights compels the judge to consider whether to grant an additional downward deviation in addition to the mandatory adjustment (R.C. 3119.231(A)); and
>
> (3) 147 overnights triggers the requirement the trial court provide an explanation for its decision to deny further deviation (R.C. 3119.231(B)).

*Mangen v. Mangen,* 2d Dist. Montgomery No. 29112, 2021-Ohio-3693, ¶ 24.

**{¶44}** In this case, the child-support worksheet included the 10 percent mandatory adjustment for shared parenting on Line 19(b). Next, the court deviated downward an additional $1,018.42 based on father's share of parenting time being equal to or exceeding 147 overnights per year, pursuant to R.C. 3119.231(B). The court's entry provided the following reasons for the deviation:

17

Father has extended parenting time and associated expenses for the children. Father requires the deviation so as to provide for the children in his household. The parties will each pay for academic and extra-curricular activities for the children on his or her own time.

**{¶45}** This deviation was not an abuse of discretion. The parties do not dispute that father now has more than 147 overnights with the children annually. Moreover, the deviation is included on Line 25(b) of the child-support worksheet, which provides that the deviation is "[f]or 3119.231 extended parenting time." Under R.C. 3119.231, courts have discretion to deviate for expenses associated with shared parenting. The court's findings provide direct support for this deviation. Mother's second assignment of error is overruled.

### *Father's First Assignment of Error: Motion to Show Cause*

**{¶46}** In father's first assignment of error, he argues that the court erred when it denied his "motion to show cause (contempt)," and failed to award him attorney fees. In sum, he argues this was an abuse of discretion because the trial court wrongly applied the unclean hands doctrine, and because the court's own findings supported a finding of contempt.

**{¶47}** This court reviews a trial court's decision on a motion for contempt for an abuse of discretion. *Cobb v. Ortiz*, 1st Dist. Hamilton No. C-200276, 2021-Ohio-2009, ¶ 8, citing *Wolf v. Wolf*, 1st Dist. Hamilton No. C-090587, 2010-Ohio-2762, ¶ 4. The trial court is empowered to "determine the kind and the character of conduct that constitutes contempt." *Fisher v. Fisher*, 7th Dist. Harrison No. 17 HA 0008, 2018-Ohio-2477, ¶ 25, citing *In re Ayer*, 119 Ohio App.3d 571, 576, 695 N.E.2d 1180 (1st Dist.1997), quoting *State ex rel. Turner v. Albin*, 118 Ohio St. 527, 161 N.E. 792 (1928). "[S]ince the primary interest involved in a contempt proceeding is the authority and proper functioning of the court, great reliance should be placed upon the discretion of the trial judge." *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 16, 520 N.E.2d 1362 (1988).

**{¶48}** "To establish civil contempt, the party seeking to enforce a court order must prove by clear and convincing evidence that a court order exists and that the nonmoving party has not complied with the terms of that order." *Cobb* at ¶ 8, citing *Mees v. Mees*, 1st Dist. Hamilton No. C-150033, 2015-Ohio-5127, ¶ 11.

**{¶49}** In his motion, father alleged that mother denied his weekend parenting time on several occasions, blocked all phone contact between him and the children, and withheld medical information from him. While not raised by mother on appeal, we

note that the court denied mother's "motion for contempt/back child support" in the same entry. Like father's motion, mother's motion was based on father's failure to comply with the divorce decree, specifically regarding parenting time.

**{¶50}** As discussed throughout this opinion, the court found that mother had withheld parenting time and medical information. However, it also found that father was not consistent in exercising his regular parenting time and "create[d] just as much drama at interactions as Mother." The record supports these findings. Thus, it was clear that because the court found both parties to be at fault for the conflicts in this case, neither party should be found in contempt. In light of our highly deferential standard of review, and because the trial court is empowered to "determine the kind and the character of conduct that constitutes contempt," we do not hold this to be an abuse of discretion. *See Fisher*, 7th Dist. Harrison No. 17 HA 0008, 2018-Ohio-2477, ¶ 25.

**{¶51}** Father contends that the court erred when it discussed the unclean hands doctrine in the "conclusions of law" section of its entry. Father argues this was erroneous because "said defense must be raised affirmatively."

**{¶52}** Even if we were to hold that it was improper for the trial court to have relied on the unclean hands doctrine, we nevertheless hold the record amply supported the court's decision to deny father's motion. *See State v. Lozier*, 101 Ohio St.3d 161, 2004-Ohio-732, 803 N.E.2d 770, ¶ 46, *superseded by statute on other grounds as recognized in State v. Shannon*, 11th Dist. Portage No. 2015-P-0077, 2016-Ohio-8220, ¶ 17 ("A reviewing court is not authorized to reverse a correct judgment merely because it was reached for the wrong reason.")

**{¶53}** Father's first assignment of error is overruled.

### *Conclusion*

**{¶54}** For the foregoing reasons, we overrule mother's first and second assignments of error, along with father's first and second assignments of error. We affirm the judgment of the domestic relations court.

Judgment affirmed.

**MYERS, P. J.,** and **WINKLER, J.,** concur.

Please note:

      The court has recorded its entry on the date of the release of this opinion