[Cite as *Fiedeldey v. Finneytown Local School Dist. Bd. of Edn.*, 2025-Ohio-5831.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| DARLA FIEDELDEY, | : | APPEAL NO. C-250075 |
| | | TRIAL NO. A-1803020 |
| Plaintiff-Appellant, | : | |
| | | |
| vs. | : | |
| | | *JUDGMENT ENTRY* |
| FINNEYTOWN LOCAL SCHOOL | : | |
| DISTRICT BOARD OF EDUCATION, | | |
| | : | |
| Defendant-Appellee. | | |
| | : | |

This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is reversed and the cause is remanded.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.


**To the clerk:**

**Enter upon the journal of the court on 12/31/2025 per order of the court.**


**By:**_____
             **Judge**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO HAMILTON COUNTY, OHIO

DARLA FIEDELDEY,                         :          APPEAL NO.   C-250075
                                                    TRIAL NO.    A-1803020
    Plaintiff-Appellant,   :

    vs.          :

                      *O P I N I O N*

FINNEYTOWN LOCAL SCHOOL :
DISTRICT BOARD OF EDUCATION,
                                         :
    Defendant-Appellee.

                                         :


Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: December 31, 2025


*Mezibov Butler*, *Marc D. Mezibov* and *Dennis A. Gleason*, for Plaintiff-Appellant,

*Bricker Graydon LLP, Jason R. Stuckey* and *David J. Lampe*, for Defendant-Appellee.

**CROUSE, Judge.**

{¶1} More than five years ago, this court upheld an order that plaintiffappellant Darla Fiedeldey be reinstated to her position as a kindergarten teacher in the Finneytown Local School District ("the District"), which she had held for nearly two decades. *See Fiedeldey v. Finneytown Local School Dist. Bd. of Edn.*, 2020-Ohio3960 (1st Dist.) ("*Fiedeldey I*"). In the intervening years, Fiedeldey has struggled to enforce that order against defendant-appellee, the District's Board of Education ("the Board").

**{¶2}** This case arises out of Fiedeldey's latest attempt to hold the Board in contempt for refusing to give her back her old job teaching kindergarten. The trial court rejected her contempt charge, finding that the Board was obligated to reinstate Fiedeldey, not to her specific job as a kindergarten teacher, but to any position within her licensure. Because we conclude that the trial court's rationales for its rejection rested on legal errors and contradicted the law of the case, we reverse the trial court's order and remand the cause for the trial court to consider anew whether the Board's actions constituted contempt.

## I. CONTEMPT PROCEEDINGS

**{¶3}** In order to contextualize what took place in the court below, we begin by reviewing the relevant framework for contempt proceedings.

**{¶4}** Neither party disputes that this case involves proceedings for indirect, civil contempt. "Indirect," because they concern alleged noncompliance "'outside the presence of the court.'" *See Troja v. Pleatman*, 2016-Ohio-5294, ¶ 12 (1st Dist.), quoting *In re Lands*, 146 Ohio St. 589, 595 (1946). "Civil," because they seek to "compel obedience to a court order" prospectively by imposing conditional penalties. *See State ex rel. Corn v. Russo*, 2001-Ohio-15, ¶ 20; *see also Troja* at ¶ 11.

**{¶5}** Generally, proceedings for indirect civil contempt involve five steps. *First*, a written charge is filed, which apprises the alleged contemnor of their allegedly contemptuous actions. *See* R.C. 2705.03; *Cincinnati v. Cincinnati Dist. Council 51*, 35 Ohio St.2d 197, 203 (1973); *Troja* at ¶ 14. *Second*, the court holds a "contempt hearing," at which the alleged contemnor may defend against the charge of contempt. *See* R.C. 2705.03 and 2705.05; *Liming v. Damos*, 2012-Ohio-4783, ¶ 30; *Docks Venture, L.L.C. v. Dashing Pacific Group, Ltd.*, 2014-Ohio-4254, ¶ 20; *Simpson v. Simpson*, 2024-Ohio-4, ¶ 21 (1st Dist.) ("[W]hen the contempt is indirect in nature, the contemnor must be given the opportunity to challenge the contempt finding at a hearing before being punished."). *Third*, if the court finds the alleged contemnor in contempt, it issues a contempt order setting forth conditions which, if met, will allow the contemnor to "purge" the contempt finding and avoid sanctions. *See Cuyahoga Cty. Bd. of Health v. Petro*, 2017-Ohio-1164, ¶ 19 (8th Dist.); *compare Docks Venture* at ¶ 16. *Fourth*, after a span of time set forth in the contempt order, the court holds a "purge hearing," at which the contemnor has the opportunity to show that they have satisfied the purge conditions or explain why they could not do so. *See id.* at ¶ 20 ("a purge hearing . . . is limited to determining whether the contemnor complied with conditions imposed for purging contempt"); *Liming* at ¶ 16. *Fifth*, if the court finds the contemnor has *not* purged the contempt, it may impose the threatened sanctions. *See Liming* at ¶ 16 ("If the [purge] conditions are unfulfilled, the court is entitled to enforce the sentence already imposed, the sanction that could have been avoided by the contemnor's compliance.").

**{¶6}** With these five steps as a framework, we turn to the facts of this case.

## II. BACKGROUND

{¶7}   In May 2018, the Board removed Fiedeldey from her position as a kindergarten teacher in the District, which she had held for 17 years. Fiedeldey appealed her termination to the Hamilton County Court of Common Pleas under R.C. 3319.16. The court ruled in her favor and ordered that she be "restored to her position" and awarded back pay and benefits in an order dated May 29, 2019 (the "Initial Order"). We affirmed the trial court's order on appeal in *Fiedeldey I*, 2020Ohio-3960 (1st Dist.). The details of Fiedeldey's removal and the incident underlying it can be found in that opinion.

{¶8} Then began Fiedeldey's saga to enforce the trial court's order. Initially, the Board did not reinstate Fiedeldey or release her backpay. So, in June 2022, Fiedeldey filed a charge in the trial court (captioned as a motion to show cause) alleging that the Board was in contempt of the Initial Order.

{¶9} In September 2022, while this contempt charge was pending, the Board approved a "one year limited contract" to employ Fiedeldey as a teacher through June 12, 2023. Fiedeldey testified that, when she returned in the fall of 2022, she was paid as a teacher but was assigned the duties of a kindergarten teaching aide—not those of a kindergarten teacher with her own classroom.

{¶10} The trial court then held a contempt hearing and, on October 18, 2022, issued an order holding the Board in contempt (the "Contempt Order"). The Contempt Order further provided that the Board could purge the contempt by reinstating Fiedeldey to her kindergarten-teacher role and releasing her backpay, plus backpay to the date of the Contempt Order, plus interest, within 14 days. The Board filed a notice of appeal of the Contempt Order and sought an emergency stay. This court granted the

stay on October 27, 2022, but later dismissed the appeal because sanctions had not yet been imposed.

**{¶11}** On December 23, 2022, Fiedeldey filed a "motion to schedule a purge hearing and for an award of sanctions" in the trial court. The trial court then held a purge hearing and, on December 29, 2022, issued an order finding that the Board had not purged the contempt and imposing sanctions (the "Sanctions Order"). The Board again appealed and sought a stay. This court again granted a stay on January 26, 2023, which lasted until we affirmed the trial court's Contempt and Sanctions Orders in

*Fiedeldey v. Finneytown Local School Dist. Bd. of Edn.*, 2024-Ohio-536 (1st Dist.) ("*Fiedeldey II*").

**{¶12}** In April 2023, while *Fiedeldey II* was pending, Fiedeldey was reassigned from her kindergarten-aide role to a position teaching third grade. Fiedeldey testified that she had taught third grade during her first year as a teacher but had never done so in the nearly two decades since. Nevertheless, she acquiesced and finished out the 2022-2023 school year in the third-grade post.

**{¶13}** In May 2023, Fiedeldey was told that she would be teaching kindergarten in the fall, but she never received a written contract stating as much. Then, in July 2023, she was informed she had again been moved and would be teaching second grade in the fall, instead of kindergarten. Because Fiedeldey felt this assignment was contrary to the trial court's orders, she returned the keys to her classroom to the administration and told them, "I'm not going to teach second grade. I'll wait until my kindergarten position is available."[1]

---

[1] The Board's minutes did not "acknowledge" Fiedeldey's assignment as a "Second Grade Intervention Teacher" until August 21, 2023, long after she had declined it and turned in her keys. Both Fiedeldey's informal notice and the Board's formal acknowledgment occurred after the June

6

**{¶14}** True to her word, Fiedeldey did not show up to take the second-grade classroom when the fall term began on August 17, 2023. The District's superintendent

sent Fiedeldey a letter instructing her to appear in school by August 21.[2] She did not. The superintendent sent several more notices warning Fiedeldey that she would be disciplined or possibly terminated for continued nonattendance. Eventually, the Board suspended Fiedeldey and, when she did not request a pretermination hearing, terminated her employment by resolution on October 16, 2023.

**{¶15}** Four months later, on February 14, 2024, we handed down our judgment affirming the Contempt and Sanctions Orders and dissolving our stay in *Fiedeldey II*.

**{¶16}** In July 2024, Fiedeldey filed a "renewed motion to show cause why defendant should not be held in contempt" in the trial court, which asserted that the Board still had not reinstated Fiedeldey to her old kindergarten job. In September 2024, a new judge was assigned to Fiedeldey's case after the previous judge, who had been presiding over the case since its initiation, retired.

**{¶17}** The trial court held a new contempt hearing and denied Fiedeldey's motion in an oral ruling, which was memorialized by a January 29, 2025 journal entry. The trial court read the Initial Order as requiring only that Fiedeldey be provided with a position in the District for which she was licensed. The trial court read the October 2022 Contempt Order as adding a requirement that the Board place Fiedeldey in a *kindergarten*-teacher role. It held that, because this court had stayed the Contempt

---

15 deadline on which Fiedeldey, as a limited-contract teacher, would ordinarily have been required to notify the Board of her resignation. *See* R.C. 3319.11(E).

[2] August 21, 2023, is also the date on which the Board's meeting minutes reflect an "acknowledg[ment]" of Fiedeldey's transfer to the second-grade assignment.

Order during the period when Fiedeldey refused the second-grade post and was terminated, the Board had complied with the Initial Order by providing Fiedeldey with a position in the District for which she was licensed. The trial court also concluded that, even if there had been a violation of the court order, it could not undo the Board's

"intervening termination" of Fiedeldey for failure to assume her second-grade post.

{¶18} The following day, the trial court amended its order denying Fiedeldey's show-cause motion, again incorporating its prior oral ruling and reiterating that Fiedeldey had "terminate[d] her own employment by failing to report for work." The amended order further stated that the trial court "would have modified the October 18, 2022 [Contempt] Order to remove the kindergarten teacher position requirement."

{¶19} Fiedeldey now appeals both orders.

### III. FIEDELDEY'S SHOW-CAUSE MOTION

{¶20} In her first assignment of error, Fiedeldey contends that the trial court abused its discretion by denying her renewed show-cause motion and failing to hold the board in contempt.

{¶21} "[S]ince the primary interest involved in a contempt proceeding is the authority and proper functioning of the court, great reliance should be placed upon the discretion of the trial judge." *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 16 (1988). So we review a denial of a motion to hold a party in contempt for an abuse of discretion. *Bohannon v. Lewis*, 2022-Ohio-2398, ¶ 47 (1st Dist.). But "courts lack the discretion to make errors of law," so we consider legal questions de novo. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 38-39. This de novo review extends to the trial court's application of nondiscretionary legal principles, like the law of the case. *See State ex rel. Yost v. Crossridge, Inc.*, 2024-Ohio-5144, ¶ 22 (7th Dist.) (trial

8

court abused its discretion by entering order in violation of law of the case established by appellate court); *Lehmier v. W. Res. Chem. Corp.*, 2019-Ohio-4245, ¶ 9 (9th Dist.) (holding that, while denials of leave to amend are reviewed for an abuse of discretion, "whether the law of the case doctrine applies in a particular situation presents a legal question, which we review de novo" (Cleaned up.)); *Lane v. U.S. Bank N.A.*, 2024Ohio-4884, ¶ 8 (10th Dist.) (holding similarly in reviewing denial of a Civ.R. 60(B) motion).

**{¶22}** In its initial ruling denying Fiedeldey's renewed show-cause motion, the court below concluded that it could not punish the Board for violating its order, either (A) because, at the time of the charged contempt, the Board had no obligation to give Fiedeldey a kindergarten position, so that her refusal to take the second-grade position constituted legitimate grounds for terminating her, or (B) because the trial court lacked authority to reinstate her in light of the Board's intervening termination order. Both positions, however, rest on legal errors. *A.*

**{¶23}** At the contempt hearing, the trial court indicated that it felt "bound" to deny the show-cause order because, during the relevant period, this court had stayed any order requiring the Board to employ Fiedeldey as a *kindergarten* teacher. Thus, the trial court concluded, the Board had complied with its then-current obligations by offering her a second-grade post, and could validly terminate her employment when she refused to take that position. Fiedeldey argues, however, that this court's "stay *only* halted execution of the Contempt order; it did not address nor relieve the Board from its obligation under the [Initial Order] to reinstate Ms. Fiedeldey to her kindergarten classroom."

*1.*

**{¶24}** As a threshold matter, we observe that Fiedeldey's "Renewed Motion For Order to Show Cause" was in the nature of a new contempt charge—"the most recent effort," as Fiedeldey put it, "to obtain enforcement of [the trial court's order] that the Board reinstate her to her previously held position as a fulltime kindergarten teacher." This renewed motion sought to vindicate many of the same rights as her *original* show-cause motion. It therefore charged the Board not merely with violating the *Contempt* or *Sanctions Order*, but also the *Initial Order*.

*2.*

**{¶25}** We therefore turn to consider which, if any, of these orders were enforceable against the Board at the time of the alleged contempt.

**{¶26}** As the Board and the trial court have correctly noted, this court stayed both the Contempt Order and the Sanctions Order pending our decision in *Fiedeldey II*, 2024-Ohio-536 (1st Dist.). After filing its notice of appeal in *Fiedeldey II*, the Board asked this court to stay the "execution of Judge Ruehlman's October 18, 2022 and December 29, 2022 Decisions [holding] [the Board] in Contempt," i.e., the Contempt and Sanctions Orders. On January 26, 2023, we "grant[ed] a stay of the execution of the contempt order pending appeal," but offered no further explanation of which orders were stayed. Given that our opinion ultimately treated the Contempt and Sanctions Orders as having merged into a single "contempt order" for purposes of appeal, *see Fiedeldey II* at ¶ 4-7, and given the scope of the Board's stay motion, we read this January 26, 2023 stay order as staying the execution of both the Contempt and Sanctions Order. Our order therefore both paused the looming purge-or-besanctioned threat imposed by the Contempt Order and relieved the Board of its obligation to make payments under the Sanctions Order until February 14, 2024, when we issued our opinion in *Fiedeldey II*.

10

**{¶27}** But our January 26 stay order in *Fiedeldey II* did not stay execution of the *Initial Order*. Thus, from January 26, 2023, to February 14, 2024, the Board remained bound to comply with the Initial Order and could be held in contempt for failing to do so, even while relieved of its duty to comply with the Contempt Order.

*3.*

**{¶28}** The question, then, is what the Initial Order required the Board to do.

**{¶29}** In its oral ruling, the trial court asserted that the Board could not be held in contempt for providing Fiedeldey with a job teaching second grade, rather than kindergarten, because the kindergarten-specific requirement was only introduced in the Contempt Order, which "was stayed at the time." The trial court appeared to believe that the Initial Order allowed the Board to install Fiedeldey in any position for which she was licensed.

**{¶30}** The trial court's reading of the Initial Order, however, is contrary to the law of the case. The doctrine of the law of the case holds that a "decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Nolan v. Nolan*, 11 Ohio St.3d 1, 3 (1984); *accord Giancola v. Azem*, 2018-Ohio-1694, ¶ 14. Where, on remand, "a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law." *Nolan* at 3; *accord Giancola* at ¶ 16.

**{¶31}** This court, in *Fiedeldey II*, held that the Initial Order had required the Board to restore Fiedeldey to her kindergarten-teaching position. In that appeal, the Board challenged the Contempt Order, arguing "that the trial court lacked the authority to order it to assign Fiedeldey to a kindergarten teaching position, rather

than merely reinstating her employment in some capacity." *Fiedeldey II*, 2024-Ohio536, at ¶ 14 (1st Dist.). We rejected that argument, holding instead that the kindergarten-position requirement had been part of the Initial Order and so could have been challenged in *Fiedeldey I*. Its propriety was therefore res judicata:

> Prior to [*Fiedeldey I*], the trial court found that the Board was liable for wrongfully terminating Fiedeldey's employment and "ordered her restored to her position." Fiedeldey identified in her complaint that her employment with the Board was "as a kindergarten teacher," and the record reflects that this is the position she held continuously from 2001 until her removal in 2017.
>
> Just like in its first assignment of error, the Board is challenging a decision of the trial court rendered before the Board's first appeal. The Board is likewise precluded from raising this challenge on the basis of res judicata. We therefore overrule the Board's second assignment of error.

*Id.* at ¶ 16-17.

**{¶32}** Our rejection of the Board's second assignment of error in *Fiedeldey II* rested on our legal conclusion that, from the day it was issued, the Initial Order had required the Board to restore Fiedeldey to a kindergarten-teaching position. That determination has now become the law of the case, and the trial court is bound to adhere to it. *See Nolan* at 3; *Giancola* at ¶ 16.

**{¶33}** We therefore hold that, to the extent the trial court concluded that the Board was not required to employ Fiedeldey as a kindergarten teacher between July and October 2023, its ruling was inconsistent with our interpretation of the Initial Order. *Fiedeldey II* made clear that the Initial Order mandated a kindergartenteaching

12

assignment, and that Initial Order continued to bind the Board during the relevant period. The law-of-the-case doctrine is designed to "'limit[] the ability of a trial court to rule in a way that is inconsistent with a decision of a reviewing court in the same case.'" *Lehmier*, 2019-Ohio-4245, at ¶ 10 (9th Dist.), quoting *Archer v. Dunton*, 2019-Ohio-1971, ¶ 17 (9th Dist.).

### *B.*

**{¶34}** The trial court also suggested that it was powerless to contradict the Board's order terminating Fiedeldey. In support of this conclusion, it cited *Ohio Am. Health Care, Inc. v. Ohio Bd. of Nursing*, 2014-Ohio-2422, ¶ 53 (10th Dist.) ("*OAHC*"), for the proposition that, "[g]enerally, where the sanction imposed by an administrative agency is within the range of permissible sanctions provided by law, we are without authority to modify that sanction." The Board makes the same argument on appeal. We find it unpersuasive.

**{¶35}** The deferential rule in *OAHC* is inapposite here. The quoted passage from that decision concerned a direct appeal from an administrative decision under R.C. Ch. 119 challenging a board's choice of sanction. *OAHC* at ¶ 9, 52-53. Indeed, in *OAHC*, the Tenth District noted that there was "little dispute" as to whether sanctions could be imposed and whether the imposed sanctions were within the bounds permitted by law. *Id.* at ¶ 51. The question was not whether the board could impose sanctions, but whether it should have selected the sanction it did. *See id.* at ¶ 49. Accordingly, the *OAHC* court disclaimed only the ability to review the board's decision to impose one sanction over another; it *did not* surrender to the board an unreviewable power to determine if the underlying conduct was sanctionable in the first place. *Compare id.* at ¶ 53 (holding that the court was "without authority" to modify an agency's sanction that was "within the range of permissible sanctions provided by

law"), *with id.* at ¶ 14-24 (reviewing evidentiary disputes to determine if "reliable, probative, and substantial evidence" had supported the board's findings of violations).

**{¶36}** In the instant case, by contrast, the question is whether, in light of the Initial Order, the Board could lawfully punish Fiedeldey's nonattendance *at all*, not whether its choice of termination over some other sanction was proper.

**{¶37}** But, at a more general level, the trial court's reasoning cannot be correct, because the Board's authority to impose sanctions does not include the authority to defy court orders. Courts and statutes frequently impose limitations on judicial review in appeals of administrative or quasi-administrative sanctions to ensure that courts do not substitute their judgment for a board's or an agency's exercise of lawfullyconferred discretion. But in *Fiedeldey I*, we upheld the trial court's order finding that the Board lacked good cause to fire Fiedeldey the first time and ordering the Board to reinstate her. *See Fiedeledy I*, 2020-Ohio-3960, at ¶ 19, 32, 37 (1st Dist.). The Board cannot now claim the "discretion" to terminate her again, if doing so would violate that valid court order. The deferential standards applied in certain administrative appeals, therefore, did not restrict the trial court's ability to enforce its own orders.

**{¶38}** Thus, the trial court erred in holding that it was "not permitted to return [Fiedeldey] to her position" by virtue of the Board's October 2023 termination order.

### C.

**{¶39}** The trial court's initial rejection of Fiedeldey's show-cause motion rested on two legal errors—one regarding the law of this case, the other regarding the court's remedial authority. Trial courts enjoy significant discretion "to 'determine the kind and the character of conduct that constitutes contempt.'" *Bohannon*, 2022-Ohio2398, at ¶ 47 (1st Dist.), quoting *Fisher v. Fisher*, 2018-Ohio-2477, ¶ 25 (7th Dist.). But discretion has limits, and no court enjoys discretion to rule based on an

error of law, *see Johnson*, 2021-Ohio-3304, at ¶ 38-39, including the controlling law of the case, *see Crossridge*, 2024-Ohio-5144, at ¶ 22 (7th Dist.).

{¶40} We therefore hold that the trial court abused its discretion by denying Fiedeldey's renewed show-cause motion for legally-erroneous reasons. Fiedeldey's first assignment of error is sustained.

## IV. MODIFICATION OF THE CONTEMPT ORDER

{¶41} Fiedeldey's second assignment of error challenges the alternative justification for denying her renewed show-cause motion that the trial court added in its amended order. In that order, the trial court suggested that, even if the Contempt Order had not been stayed during the relevant period, it "would have modified the October 18, 2022 [Contempt] Order to remove the kindergarten teacher position requirement."

{¶42} The trial court's counterfactual, nunc-pro-tunc modification of its Contempt Order is irrelevant here. As the trial court acknowledged, the Contempt Order was stayed at the time of the alleged contempt; modifying it would have made no difference. The Board would still have been required to comply with the Initial Order unless and until that order was validly modified or dissolved. It is therefore the *Initial Order* that matters in this case, not the Contempt Order the trial court purported to modify.

{¶43} A trial court has discretion to modify its orders upon proof of a material change in conditions. *See Marik v. KB Compost Servs.*, 2003-Ohio-1297, ¶ 6 (9th Dist.); *see also State ex rel. Bosch v. Denny's Place*, 98 Ohio App. 351, 357 (1st Dist. 1954) (describing the "familiar principle of equity that the court granting a permanent injunction has power to vacate or modify it at any time on proof of a change of conditions"); 56 Ohio Jur.3d, Injunctions, § 216 (2024). And such a material change

in circumstances may serve as a defense to contempt, even in the absence of an ex ante modification. *See Johnson v. Preston*, 12 Ohio St.2d 100, 101-102 (1967). But the trial court's purported retroactive amendment of the Contempt Order in this case was simply not relevant to determining whether the Board was in contempt of the Initial Order during the relevant period. To the extent the trial court relied on the purported modification to deny Fiedeldey's renewed show-cause motion in its amended order, it abused its discretion. Fiedeldey's second assignment of error is therefore sustained.

## V. REMEDY & CONCLUSION

**{¶44}** We have concluded that the trial court's rationales for denying Fiedeldey's renewed show-cause motion rested on legal errors. The trial court's denial was therefore an abuse of discretion, and Fiedeldey's assignments of error are sustained.

**{¶45}** The question now is one of our remedial authority. The Initial Order required Fiedeldey's reinstatement as a kindergarten teacher, which never occurred. Yet, as we have already emphasized, "the primary interest involved in a contempt proceeding is the authority and proper functioning of the court," *Denovchek*, 36 Ohio St.3d at 16, so that the trial court, within the bounds of law, enjoys discretion in defining and punishing contempt of its orders. *See Bohannon*, 2022-Ohio-2398, at ¶ 47 (1st Dist.).

**{¶46}** We cannot exercise the trial court's discretion for it; we can only say that such discretion was not exercised properly here. We therefore reverse the denial of Fiedeldey's renewed show-cause motion and remand this cause to the trial court for a determination, consistent with law and this opinion, of whether the Board's failure to provide Fiedeldey with a kindergarten position and subsequent termination of her employment presented a prima facie case of contempt of the Initial Order, and, if so,

whether the Board can claim any defense to the charged contempt. *See Wolf v. Wolf*, 2010-Ohio-2762, ¶ 4 (1st Dist.); *Bohannon* at ¶ 48.

Judgment reversed and cause remanded.

**ZAYAS, P.J.,** and **NESTOR, J.,** concur.